**BEFORE THE UNITED STATES
JUDICIAL PANEL ON MULTI-DISTRICT LITIGATION**

| | |
|---|---|
| In re: ) | |
| ) | MDL Docket No. _____ |
| T-MOBILE DATA BREACH ) | |
| LITIGATION ) | |
| ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR TRANSFER OF ACTIONS TO THE WESTERN DISTRICT OF WASHINGTON PURSUANT TO 28 U.S.C. § 1407 FOR COORDINATED OR CONSOLIDATED <u>PRETRIAL PROCEEDINGS</u>**

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 1

II. LEGAL STANDARD..................................................................................................... 2

III. ARGUMENT .................................................................................................................. 3

    A. The Litigation Satisfies the Requirements for Consolidation and Transfer Under 28 U.S.C. § 1407............................................................................... 3

        1. The Litigation Involves Common Questions of Fact................................. 3

        2. The Parties Face Duplicative Discovery Absent Transfer and Consolidation ............................................................................................. 4

        3. Transfer and Consolidation Will Prevent Inconsistent Pretrial Rulings..... 5

        4. There are Enough Actions to Support Transfer and Centralization............ 6

    B. The Western District of Washington is the Appropriate Transferee Forum........... 6

IV. CONCLUSION................................................................................................................ 8

**TABLE OF AUTHORITIES**

Cases

*In re 21st Century Oncology Customer Data Sec. Breach Litig.*,
  214 F. Supp. 3d 1357 (J.P.M.L 2016) ............................................................................... 7

*In re Alodex Corp.*,
  380 F. Supp. 790 (J.P.M.L. 1974) ..................................................................................... 6

*In re Am. Med. Collection Agency, Inc., Customer Data Sec. Breach Litig.*,
  410 F. Supp. 3d 1350 (J.P.M.L. 2019) .............................................................................. 4

*In re Amoxicillin Patent & Antitrust Litig.*,
  449 F. Supp. 601 (J.P.M.L. 1978) ..................................................................................... 6

*In re Blackbaud, Inc., Customer Data Sec. Breach Litig.*,
  509 F. Supp. 3d 1362 (J.P.M.L. 2020) .............................................................................. 3

*In re Enron Sec. Derivative & ERISA Litig.*,
  196 F. Supp. 2d 1375 (J.P.M.L. 2002) .............................................................................. 5

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*,
  363 F. Supp. 3d 1372 (J.P.M.L. 2019) .......................................................................... 4, 7

*In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*,
  No. MDL 2994, __ F. Supp. 3d __, 2021 WL 2371289 (J.P.M.L. June 4, 2021) ............. 3

*In re Phila. Life Ins. Co. Sales Pracs. Litig.*,
  149 F. Supp. 2d 937 (J.P.M.L. 2001) ................................................................................ 6

*In re Plumbing Fixture Cases*,
  298 F. Supp. 484 (J.P.M.L. 1968) ..................................................................................... 3

*In re Wireless Tel. Replacement Prot. Programs Litig.*,
  180 F. Supp. 2d 1381 (J.P.M.L. 2002) .............................................................................. 6

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
  223 F. Supp. 3d 1353 (J.P.M.L 2016) ............................................................................... 7

*In re: Equifax, Inc., Customer Data Sec. Breach Litig.*,
  289 F. Supp. 3d 1322 (J.P.M.L. 2017) .......................................................................... 4, 7

*Resource Exploration Inc. Sec. Litig.*,
  483 F. Supp. 817 (J.P.M.L. 1980) ..................................................................................... 5

Statutes

28 U.S.C. § 1407 ........................................................................................................... passim

<u>Rules</u>

Rule 6.2 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation ...................... 1

<u>Other Authorities</u>

Manual for Complex Litigation (Fourth) § 20.131 (2004) ............................................................. 3

I.      INTRODUCTION

More than 100 million prospective, former, and current T-Mobile customers have entrusted their confidential information with T-Mobile USA, Inc.—including their names, dates of birth, social security numbers, driver's license and ID information, phone numbers, and IMEI and IMSI information (the typical identifier numbers associated with a mobile phone). On August 16, 2021, T-Mobile confirmed that it was subject to a massive data breach and that it had failed to protect that confidential information for at least 54 million of those individuals.

Pursuant to 28 U.S.C. § 1407 and Rule 6.2 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, Veera Daruwalla, Michael March, and Lavicieia Sturdivant, Plaintiffs in the case styled *Daruwalla, et al. v. T Mobile USA, Inc*., No. 2:21-cv-01118, U.S. District Court for the Western District of Washington (collectively, "Movants"), respectfully move the Judicial Panel on Multidistrict Litigation for an Order transferring the five cases listed in the Schedule of Actions filed concurrently herewith (collectively, "the Actions"), as well as any tag-along cases subsequently filed involving similar facts or claims, to the U.S. District Court for the Western District of Washington for coordinated or consolidated proceedings.

Movants are plaintiffs in the first-filed of the five class action cases filed to date against T-Mobile USA, Inc. or T-Mobile US, Inc. ("T-Mobile") relating to the data breach. Plaintiffs anticipate many additional cases to be filed, as well. Plaintiffs in each of the Actions allege that T-Mobile's deficient security protocols permitted unauthorized individuals to gain access to T-Mobile's servers and exfiltrate the personal information of at least 54 million prospective, former, and current T-Mobile customers. T-Mobile acknowledged that over 40 million former or prospective customers who had previously applied for credit with T-Mobile had their full names, dates of birth, social security numbers, driver's license and ID information, phone numbers, and IMEI and IMSI information compromised in the breach. An additional 13.1 million victims are

current "postpaid" customers of T-Mobile who are billed at the end of each month. Additionally, approximately 850,000 active T-Mobile prepaid customers had their full names, phone numbers, and account PINs exposed in the breach.

As alleged in the Actions, the consequences of T-Mobile's data breach are severe: the hackers claim to have already sold millions of records and are marketing millions more for sale directly to buyers, and the stolen information can be used to commit countless types of identity theft and fraud. All of the Actions allege violations of various state and federal statutes and common law principles against T-Mobile relating to the breach, and all seek certification of similar classes or subclasses of victims.

Consistent with the Panel's course in recent data breach litigation, Movants seek the consolidation and transfer of the Actions to the U.S. District Court for the Western District of Washington, Seattle Division, where T-Mobile is headquartered, where its allegedly tortious conduct is centered, and where crucial witnesses and documents will be located. All of the class actions filed against T-Mobile contain common allegations and common questions of fact.

## II.     LEGAL STANDARD

Actions containing allegations with common questions of fact may be transferred and consolidated or coordinated pursuant to section 1407 if transfer will facilitate the convenience of the parties and witnesses, and will promote the just and efficient conduct of the transferred cases. 28 U.S.C. § 1407. The Panel typically considers four factors in deciding whether to transfer a case under Section 1407:

      a.   the elimination of duplication in discovery;

      b.   the avoidance of conflicting rules and schedules;

      c.   the reduction of litigation cost; and

    d. the conservation of the time and effort of the parties, attorneys, witnesses, and courts.

*See* Manual for Complex Litigation (Fourth) § 20.131 (2004) (citing *In re Plumbing Fixture Cases*, 298 F. Supp. 484 (J.P.M.L. 1968)). Each of these factors favors transfer and consolidation of the cases filed against T-Mobile.

## III. ARGUMENT

### A. The Litigation Satisfies the Requirements for Consolidation and Transfer Under 28 U.S.C. § 1407

Pretrial transfer and consolidation under section 1407 is appropriate and necessary here. The Actions involve similar allegations and legal standards and will likely be numerous. Unless these cases are consolidated, the parties will incur excessive costs due to duplicative discovery and will face the risk of inconsistent rulings on a variety of matters.

#### 1. The Litigation Involves Common Questions of Fact

In assessing whether consolidation is appropriate under section 1407, the Panel looks to the pleadings to determine the extent to which common questions of fact are present. The Complaints in these cases clearly present common questions of fact. Each Complaint is based on allegations that T-Mobile allowed a massive security breach in violation of various statutes and state common law. In addition, the Complaints generally seek certification of similar classes or subclasses. This Panel has consistently consolidated large-scale data breach cases such as this because they inherently involve common questions of fact. *See, e.g.*, *In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, No. MDL 2994, __ F. Supp. 3d __, 2021 WL 2371289, at *1 (J.P.M.L. June 4, 2021) (consolidation appropriate where actions "share factual issues relating to a June 2020 incident in which Mednax's e-mail system was breached, potentially compromising the personally identifiable and health-related information of nearly two million individuals."); *In*

3

re Blackbaud, Inc., Customer Data Sec. Breach Litig., 509 F. Supp. 3d 1362, 1363 (J.P.M.L. 2020) ("These putative class actions present common factual questions concerning an alleged ransomware attack and data security breach of Blackbaud's systems from about February 2020 through May 2020 that allegedly compromised the personal information of millions of consumers doing business with entities served by Blackbaud's cloud software and services."); In re Am. Med. Collection Agency, Inc., Customer Data Sec. Breach Litig., 410 F. Supp. 3d 1350, 1354 (J.P.M.L. 2019) (consolidation appropriate where "actions present common factual questions concerning an alleged data breach of AMCA's systems from about August 2018 through March 2019, that allegedly compromised patient data provided to AMCA by Quest, LabCorp, Bio-Reference, and other medical testing laboratories."); In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig., 363 F. Supp. 3d 1372, 1374 (J.P.M.L. 2019) (consolidation appropriate where actions "share factual issues concerning a recently-disclosed breach of Marriott's Starwood guest reservation database from 2014 to 2018. The factual overlap among these actions is substantial, as they all arise from the same data breach, and they all allege that Marriott failed to put in to place reasonable data protections"); In re: Equifax, Inc., Customer Data Sec. Breach Litig., 289 F. Supp. 3d 1322, 1324–25 (J.P.M.L. 2017) (consolidation appropriate where actions "share factual issues concerning the recent cybersecurity incident involving Equifax in which the personally identifiable information of more than 145 million consumers was compromised.").

### 2. The Parties Face Duplicative Discovery Absent Transfer and Consolidation

Because the allegations in all the cases are substantially similar and derive from the same common event, the parties face duplicative discovery if the cases are not transferred and consolidated. This is an important consideration for the panel in that transfer and consolidation "ensure[s] that the actions are supervised by a single judge who, from day-to-day contact with all

aspects of the litigation, will be in the best position to design a pretrial program that will prevent duplicative discovery . . . and substantially conserve the time and efforts of the parties, the witnesses and the federal judiciary." *Resource Exploration Inc. Sec. Litig.*, 483 F. Supp. 817, 821 (J.P.M.L. 1980). The parties in these actions will necessarily engage in duplicative discovery. All Plaintiffs will be seeking the same documentation from T-Mobile and will likely request to depose the same witnesses. T-Mobile will raise the same defenses, argue the same class certification and discovery objections, seek the same protective orders, and assert the same privileges in each case. Accordingly, consolidation of the cases will permit the parties to coordinate their efforts in a single proceeding, thereby promoting efficiency and preserving party and judicial resources.

### 3. Transfer and Consolidation Will Prevent Inconsistent Pretrial Rulings

The Panel considers the possibility of inconsistent rulings on pretrial issues because of the possible res judicata or collateral estoppel effects on other cases. *See In re Enron Sec. Derivative & ERISA Litig.*, 196 F. Supp. 2d 1375, 1376 (J.P.M.L. 2002) (granting a transfer in part to prevent inconsistent pretrial rulings, particularly with respect to questions of class certification). Because of the similarity of the allegations in the Complaints, and the likelihood that future filed actions will contain the same allegations, the possibility of inconsistent rulings on pretrial motions is substantially increased. For example, Plaintiffs anticipate that T-Mobile will file motions to dismiss, motions to compel arbitration, and motions for summary judgment. Inconsistent rulings on those dispositive motions would create inherent conflicts as the Actions seek to certify overlapping classes. In addition, because of the similarity in the allegations, T-Mobile will assert the same defenses in opposition to Plaintiffs' claims, creating a real risk of inconsistent pretrial rulings. In light of this risk, centralization is in the best interests of all parties to the litigation as well as the courts.

### 4. There are Enough Actions to Support Transfer and Centralization

As stated above, there are currently five class action cases pending against T-Mobile relating to the breach, and Movants believe many more will follow. The data breach that is the subject of the Actions has received a great deal of publicity, involves millions of individuals, and numerous tag-along actions will likely be filed against T-Mobile in federal courts around the country. The Panel has routinely ordered centralization even where three or fewer cases are pending. *See, e.g.*, *In re Wireless Tel. Replacement Prot. Programs Litig.*, 180 F. Supp. 2d 1381, 1382 (J.P.M.L. 2002) (consolidating three consumer protection cases and determining that pending motions can be presented to and decided by the transferee judge); *In re Phila. Life Ins. Co. Sales Pracs. Litig.*, 149 F. Supp. 2d 937, 938 (J.P.M.L. 2001) (consolidating two deceptive insurance sales cases and finding that such transfer would promote the just and efficient conduct of the litigation); *In re Amoxicillin Patent & Antitrust Litig.*, 449 F. Supp. 601, 603 (J.P.M.L. 1978) (consolidating three cases involving patent and antitrust issues); *In re Alodex Corp.*, 380 F. Supp. 790, 791 (J.P.M.L. 1974) (consolidating three securities actions).

Given the number of current and likely tag-along actions related to this data breach, transfer and centralization is appropriate.

### B. The Western District of Washington is the Appropriate Transferee Forum

The applicable factors support the United States District Court for the Western District of Washington as the appropriate jurisdiction for consolidation of pretrial proceedings in this litigation. Defendant T-Mobile maintains its corporate headquarters in Bellevue, Washington, approximately 10 miles from the proposed transferee courthouse. As a result, many of the crucial witnesses are present in the Western District of Washington and documents are located there. Seattle, Washington is also easily accessible, as it is served by Seattle-Tacoma International Airport, which is less than 15 miles from the proposed transferee courthouse.

Moreover, it is common practice for cases to be consolidated in the home district of the defendant, particularly in the context of data breach litigation. *See, e.g.*, *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 363 F. Supp. 3d at 1374–75 ("We select the District of Maryland as the transferee district for this litigation. Marriott is headquartered in that district, and relevant documents and witnesses thus likely will be found there."); *In re: Equifax, Inc., Customer Data Sec. Breach Litig.*, 289 F. Supp. 3d at 1326 ("We select the Northern District of Georgia as the transferee district for this litigation. Equifax is headquartered in that district, and relevant documents and witnesses thus likely will be found there."); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 223 F. Supp. 3d 1353, 1354-55 (J.P.M.L 2016) ("We conclude that the Northern District of California is an appropriate transferee district for this litigation. Defendant Yahoo's corporate headquarters is located within the district, and therefore relevant documents and witnesses are likely to be located there."); *In re 21st Century Oncology Customer Data Sec. Breach Litig.*, 214 F. Supp. 3d 1357, 1358 (J.P.M.L 2016) ("The Middle District of Florida is an appropriate transferee forum for this litigation. 21st Century is headquartered in this district, and the witnesses and documents relevant to the facts of this litigation are located there."). For similar reasons here, consolidation of these proceedings in the Western District of Washington is convenient for all parties and witnesses and is the most appropriate transferee forum.

Two of the first five filed cases are also pending in the Western District of Washington; as of this time, the other districts have only one filing each. Movants here, the *Daruwalla* Plaintiffs, are pending before the Honorable Brian A. Tsuchida. While a Magistrate Judge, Movants believe Judge Tsuchida would be capable of handling an MDL of this magnitude. Alternatively, the *Espinoza* Plaintiffs are currently pending before the Honorable Barbara J. Rothstein. Judge Rothstein has handled several previous MDLs and would also be an excellent transferee judge, as

7

would any of the judges in the Western District of Washington, many of whom have capably overseen similar complex MDLs.

## IV. CONCLUSION

For the reasons set forth herein, Plaintiffs' motion for transfer of actions pursuant to 28 U.S.C. § 1407 should be granted and these related actions, as well as any subsequently filed actions containing similar allegations, should be transferred to the U.S. District Court for the Western District of Washington.

Dated: August 23, 2021

Respectfully submitted,

/s/ *Norman E. Siegel*
Norman E. Siegel (Missouri Bar No. 44378)
Barrett J. Vahle (Missouri Bar No. 56674)
J. Austin Moore (Missouri Bar No. 64040)
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Tel: (816) 714-7100
Fax: (816) 714-7101
siegel@stuevesiegel.com
vahle@stuevesiegel.com
moore@stuevesiegel.com

Kim D. Stephens, P.S., WSBA #11984
Jason T. Dennett, WSBA #30686
Kaleigh N. Powell, WSBA #52684
**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, WA 98101
Tel: (206) 682-5600/Fax: (206) 682-2992
jdennett@tousley.com
kstephens@tousley.com
kpowell@tousley.com

Daniel J. Mogin
Jennifer M. Oliver
Timothy Z. LaComb

**MOGINRUBIN LLP**
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: (619) 687-6611
dmogin@moginrubin.com
joliver@moginrubin.com
tlacomb@moginrubin.com

Jonathan L. Rubin
**MOGINRUBIN LLP**
1615 M Street, NW, Third Floor
Washington, D.C. 20036
Tel: (202) 630-0616
jrubin@moginrubin.com

James Pizzirusso
**HAUSFELD LLP**
888 16th Street N.W., Suite 300
Washington, DC 20006
Telephone: 202-540-7200
jpizzirusso@hausfeld.com

Steven M. Nathan
**HAUSFELD LLP**
33 Whitehall St., 14th Floor
New York, NY 10004
Telephone: (646) 357-1100
snathan@hausfeld.com

*Counsel for Movants Veera Daruwalla, Michael March, and Lavicieia Sturdivant*