# EXHIBIT 3

JURYDEMAND

# U.S. District Court
# United States District Court for the Western District of Washington (Seattle)
## CIVIL DOCKET FOR CASE #: 2:21-cv-01157-TLF

Rogoff v. T-Mobile USA Inc
Assigned to: Judge Theresa L Fricke
Cause: 28:1332 Diversity

Date Filed: 08/26/2021
Jury Demand: Plaintiff
Nature of Suit: 360 P.I.: Other
Jurisdiction: Diversity

**Plaintiff**

**Valerie Rogoff**                        represented by    **Mike Kanovitz**
LOEVY & LOEVY (IL)
311 N ABERDEEN 3RD FLOOR
CHICAGO, IL 60607
312-243-5900
Email: mike@loevy.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Scott Drury**
LOEVY & LOEVY (IL)
311 N ABERDEEN 3RD FLOOR
CHICAGO, IL 60607
312-243-5900
Email: drury@loevy.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**David B Owens**
LOEVY & LOEVY
100 S KING STREET STE 100
SEATTLE, WA 98014
312-243-5900
Email: David@loevy.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**T-Mobile USA Inc**

| Date Filed | # | Docket Text |
| --- | --- | --- |

| | | |
|---|---|---|
| 08/26/2021 | 1 | COMPLAINT against defendant(s) T-Mobile USA Inc with JURY DEMAND (Receipt # AWAWDC-7225755) Attorney David B Owens added to party Valerie Rogoff(pty:pla), filed by Valerie Rogoff. (Attachments: # 1 Civil Cover Sheet)(Owens, David) (Entered: 08/26/2021) |
| 08/26/2021 | 2 | APPLICATION OF ATTORNEY Scott R. Drury FOR LEAVE TO APPEAR PRO HAC VICE for Plaintiff Valerie Rogoff (Fee Paid) Receipt No. AWAWDC-7225812 (Owens, David) (Entered: 08/26/2021) |
| 08/26/2021 | 3 | APPLICATION OF ATTORNEY Michael Kanovitz FOR LEAVE TO APPEAR PRO HAC VICE for Plaintiff Valerie Rogoff (Fee Paid) Receipt No. AWAWDC-7225833 (Owens, David) (Entered: 08/26/2021) |
| 08/26/2021 | 4 | ORDER re 2 Application for Leave to Appear Pro Hac Vice. The Court ADMITS Attorney Scott Drury for Plaintiff Valerie Rogoff, by Clerk Ravi Subramanian. No document associated with this docket entry, text only. *NOTE TO COUNSEL: Local counsel agrees to **sign all filings** and to be prepared to handle the matter, including the trial thereof, in the event the applicant is unable to be present on any date scheduled by the court, pursuant to LCR 83.1(d).*(DS) (Entered: 08/26/2021) |
| 08/26/2021 | 5 | ORDER re 3 Application for Leave to Appear Pro Hac Vice. The Court ADMITS Attorney Mike Kanovitz for Plaintiff Valerie Rogoff, by Clerk Ravi Subramanian. No document associated with this docket entry, text only. *NOTE TO COUNSEL: Local counsel agrees to **sign all filings** and to be prepared to handle the matter, including the trial thereof, in the event the applicant is unable to be present on any date scheduled by the court, pursuant to LCR 83.1(d).*(DS) (Entered: 08/26/2021) |
| 08/26/2021 | 6 | PRAECIPE TO ISSUE SUMMONS by Plaintiff Valerie Rogoff (Drury, Scott) (Entered: 08/26/2021) |
| 08/27/2021 | | Judge Theresa L Fricke added. (SG) (Entered: 08/27/2021) |
| 08/27/2021 | 7 | Summons Electronically Issued as to defendant(s) T-Mobile USA Inc (SG) (Entered: 08/27/2021) |
| 08/28/2021 | 8 | NOTICE of Related Case(s) 2:21-cv-01118-BAT, 2:21-cv-01119-BJR, 2:21-cv-01130-JRC, 2:21-cv-01137-RSL, 2:21-cv-01338-RSL, 2:21-cv-01139-RAJ, 2:21-cv-01148-RSL, 2:21-cv-01153-JLR, 2:21-cv-01161, 2:21-cv-01169, by Plaintiff Valerie Rogoff. (Drury, Scott) (Entered: 08/28/2021) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 08/30/2021 10:25:06 | | | |
| **PACER Login:** | BJVahle132 | **Client Code:** | 11360001 |
| **Description:** | Docket Report | **Search Criteria:** | 2:21-cv-01157-TLF |
| **Billable Pages:** | 2 | **Cost:** | 0.20 |

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON AT SEATTLE

VALERIE ROGOFF, for herself and others
similarly situated,

               Plaintiffs,

        v.

T-MOBILE USA, INC.,

               Defendant.

No. _____

CLASS ACTION COMPLAINT

JURY DEMAND

## CLASS ACTION COMPLAINT

Plaintiff Valerie Rogoff, on behalf of herself and all other similarly situated individuals ("Plaintiff"), by and through her attorneys, brings this Class Action Complaint against Defendant T-Mobile USA, Inc. ("T-Mobile") and alleges the following:

### INTRODUCTION

1. Defendant T-Mobile has a history of lax security practices that have resulted in multiple breaches of customers' sensitive personal information. For instance, in the short timespan between August 2018 and December 2020, Defendant experienced four separate data

CLASS ACTION COMPLAINT– 1

breaches that, in combination, allowed hackers to access the sensitive data of millions of T-Mobile customers.[1]

2.　Despite being on notice of its insecure data security practices, Defendant failed to implement necessary upgrades that would protect customers' and potential customers' personal information.

3.　On August 15, 2021, *Motherboard* reported that Defendant had experienced another massive breach of multiple data servers involving over 100 million people.[2] According to the report, the hacker obtained highly sensitive personal information, including Social Security numbers, names, physical addresses, driver's license information and unique International Mobile Equipment Identity ("IMEI") numbers for victims' mobile devices.[3] The report further stated that the hacker "is asking for 6 bitcoin, around $270,000, for a subset of the data containing 30 million social security numbers and driver licenses. The seller said they are privately selling the rest of the data at the moment."[4]

---

[1] Catalin Cimpanu, *T-Mobile Discloses Its Fourth Data Breach in Three Years*, ZDNet (Jan. 4, 2021), https://www.zdnet.com/article/t-mobile-discloses-its-fourth-data-breach-in-three-years/ (last accessed on Aug. 24, 2021).
[2] Joseph Cox, *T-Mobile Investigating Claims of Massive Customer Data Breach*, Motherboard (Aug. 15, 2021), https://www.vice.com/en/article/akg8wg/tmobile-investigating-customer-data-breach-100-million (last accessed on Aug. 24, 2021).
[3] *Id.*
[4] *Id.*

LOEVY & LOEVY
100 S. KING STREET., #100-748
SEATTLE, WASHINGTON 98104
T: 312-243-5900, FAX: 312-243-5902

4. By August 16, 2021, Defendant confirmed the data breach and conceded that it has impacted almost 50 million victims (the "Data Breach"), a number that has since ballooned to over 54 million.[5]

5. Plaintiff is a former and current T-Mobile customer and brings this Class Action Complaint for compensatory damages, as well as declaratory and injunctive relief, in order to: (a) require Defendant to compensate Plaintiff and class members for their damages; (b) require Defendant to disgorge its ill-gotten gains; and (c) ensure Defendant implements necessary enhancements to prevent further unauthorized access to customers' sensitive personal information.

## PARTIES

6. Plaintiff VALERIE ROGOFF is an Illinois resident and a former and current T-Mobile customer. Plaintiff has been notified by Defendant that her personal information was accessed and obtained during the Data Breach without authorization.

7. Defendant T-Mobile USA, Inc. is a Delaware corporation headquartered in Bellevue, Washington.

## JURISDICTION AND VENUE

8. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) (the "Class Action Fairness Act") because sufficient diversity of citizenship exists between the parties in this action, the aggregate amount in controversy exceeds $5,000,000, exclusive of interests and costs, and

---

[5] *T-Mobile Cybersecurity Incident Update* (Aug. 16, 2021), https://www.t-mobile.com/news/network/cybersecurity-incident-update-august-2021 (last visited Aug. 24, 2021); *T-Mobile Shares Updated Information Regarding Ongoing Investigation into Cyberattack* (Aug. 20, 2021), https://www.t-mobile.com/news/network/additional-information-regarding-2021-cyberattack-investigation (last accessed on Aug. 24, 2021); *see also* Joseph Cox, *T-Mobile Confirms It Was Hacked* (Aug. 16, 2021), https://www.vice.com/en/article/y3d4dw/t-mobile-confirms-it-was-hacked (last accessed on Aug. 24, 2021).

CLASS ACTION COMPLAINT– 3

LOEVY & LOEVY
100 S. KING STREET., #100-748
SEATTLE, WASHINGTON 98104
T: 312-243-5900, FAX: 312-243-5902

there are 100 or more members of the Class. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

9.      This Court has personal jurisdiction over Defendant because it is at home in the Western District of Washington. As alleged above, Defendant is headquartered in Bellevue, Washington.

10.     Venue is proper under 28 U.S.C. § 1391(b)(1) because Defendant resides in the Western District of Washington.

## FACTUAL ALLEGATIONS

### *The Data Breach*

11.     As summarized above, Defendant has admitted that it was the subject of the Data Breach that impacted millions of victims. This represents Defendant's fifth data breach since August 2018.

12.     News of the Data Breach came to light via the Twitter feed of @und0xxed which revealed details of the hack,[6] as opposed to Defendant learning of the breach on its own.

13.     According to @und0xxed, the hackers exploited an opening in Defendant's wireless data network to access two of Defendant's customer data centers, one of which contained data going back to the mid-1990s.[7] According to @und0xxed, the hackers obtained over 100 gigabytes of data, at least some of which was unencrypted.[8]

---

[6] *T-Mobile Investigating Claims of Massive Data Breach*, <u>Krebs on Security</u> (Aug. 16, 2021), https://krebsonsecurity.com/2021/08/t-mobile-investigating-claims-of-massive-data-breach/ (last accessed on Aug. 24, 2021).

[7] *Id.*

[8] *Id.*; *T-Mobile: Breach Exposed SSN/DOB of 40M+ People*, <u>Krebs on Security</u> (Aug. 18, 2021), https://krebsonsecurity.com/2021/08/t-mobile-breach-exposed-ssn-dob-of-40m-people/ (last accessed on Aug. 24, 2021).

CLASS ACTION COMPLAINT– 4

14.     An example of a sales thread advertising the stolen personal information customer data is set forth below[9]:

SELLING 124M U.S.A. SSN, DOB, DL database, freshly breached
by SubVirt - 9 hours ago

SubVirt

M.V.P User

| Posts | 24 |
| Threads | 8 |
| Joined | Mar 2019 |
| Reputation | 30 |

2 YEARS OF SERVICE

Exclamation 9 hours ago  This post was last modified 4 hours ago by SubVirt. Edited 2 times in total.

This data has never been sold to anyone else and is not public.
It was dumped several days ago.
Edit: Just to clarify, there are 30 million unique SSNs in these files, due to duplicates

Sample:

29-JAN-83,              :KER,VA,24014
19-NOV-45,              MO,PR,00951
09-OCT-73,              .L,TX,78023
14-OCT-82,              Y,11223
04-JUN-84,              EBISH,PA,18651
13-JUL-79,              E,NY,11212
13-NOV-90,              NT,TX,77086
10-DEC-63,              ,CA,91770
30-JAN-38,              NO,NY,10034

SERIOUS BUYERS ONLY, MUST SHOW PROOF OF FUNDS BEFORE ADDITIONAL INFOR

Price: 6 Bitcoin
My Telegram:

15.     While Defendant first admitted the existence of the Data Breach on August 16, 2021, it did not similarly admit that the Data Breach involved personal information until approximately August 19, 2021. At that time, Defendant disclosed that the Data Breach exposed the following highly-sensitive personal information, among other information: (a) Social Security numbers; (b) government identification numbers; (c) driver's license numbers; (d) dates of birth; (e) names; (f) addresses; and (g) phone numbers. Defendant has since disclosed the Data Breach included: (a) unique mobile device identifier information – namely, IMEI

---

[9] *Id.*

CLASS ACTION COMPLAINT– 5

LOEVY & LOEVY
100 S. KING STREET., #100-748
SEATTLE, WASHINGTON 98104
T: 312-243-5900, FAX: 312-243-5902

numbers and International Mobile Subscriber Identity ("IMSI") numbers; and (b) personal identification numbers of some victims.

16.     An IMSI number is comprised of data that identifies the user's country, system carrier (*e.g.*, T-Mobile, Verizon, or AT&T) and mobile subscription identification ("SIM") number. A SIM number is a unique string of numbers that identify the user of a SIM card. A SIM card is a portable memory chip that stores information about the mobile device user.

17.     By August 19, 2021, Defendant admitted the harm caused to victims of the Data Breach, including Plaintiff and class members, by offering two years of identity protection services.

18.     Since admitting that it was the subject of the Data Breach, Defendant has further revealed the massive magnitude of the Data Breach: (a) approximately 13.1 million postpaid customers; (b) approximately 41 million former or prospective customers; and (c) approximately 850,000 active prepaid customers.

19.     Shortly after Defendant confirmed the Data Breach, it began notifying victims, including Plaintiff and class members. The notification advised that Defendant "has determined that unauthorized access to some of your personal data has occurred" and recommended that victims "take action to protect [their] credit." The notification downplayed the true significance of the Data Breach by highlighting that Defendant had no evidence that victims' "debit/credit card information was compromised," while concealing the true nature of the highly sensitive personal information that was obtained by the hackers and the fact that information already had been posted for sale.

20.     Defendant has failed to fully disclose and has otherwise concealed other details related to the Data Breach. For instance, Defendant has failed to disclose and concealed when

CLASS ACTION COMPLAINT– 6

the Data Breach occurred, whether the vulnerability that resulted in the Data Breach was known to Defendant prior to the Data Breach and whether Defendant made any effort prior to the Data Breach to remedy the vulnerability.

***The Consequences of the Data Breach***

21. As alleged above, Defendant already has acknowledged the grave ramifications to victims of the Data Breach by providing them with two years of identity protection services.

22. Moreover, security experts have advised that victims take the following steps to protect themselves from the harms of the Data Breach: (a) change their account password and PIN; (b) freeze their credit; (c) change the way they utilize two factor authentication (an authentication process where a security code can be sent to a mobile device, among other methods, to verify identity); and (d) stay alert for potential misuse of IMEI and ISMI numbers.[10]

23. The fact that the Data Breach has compromised two-factor authentication is especially egregious because two factor authentication is itself a way to prevent hackers and identity thieves from accessing a person's confidential and/or financial information.

***The Market for Data***

24. As evidenced by the conduct of the hackers in this case, an online market for data exists.

25. Several online companies allow individuals to sell their own data online.

26. One such company estimates that individuals can earn up $2,000 per year selling their data.

---

[10] Chris Velazco, *Here's What to Do If You Think You're Affected by T-Mobile's Big Data Breach*, Washington Post (Aug. 20, 2021), https://www.washingtonpost.com/technology/2021/08/19/t-mobile-data-breach-what-to-do/ (last accessed on Aug. 24, 2021).

CLASS ACTION COMPLAINT– 7

27.     By unlawfully collecting, distributing and using the data of Data Breach victims, including Plaintiff and class members, Defendant diminished the value of the data and unjustly enriched itself.

### Defendant's History of Lax Security Practices

28.     Defendant has a disturbing history of lax security practices and deceptive data privacy practices, as summarized above and alleged in more detail below.

29.     Prior to the Data Breach, Defendant experienced four other data breaches in three years.[11]

30.     In December 2020, hackers accessed the accounts of Defendant's customers and obtained phone numbers, call-related information and the number of subscribed lines.[12] The breach impacted approximately 200,000 customers.[13]

31.     In March 2020, hackers gained access to employee and customer account information, including Social Security numbers, financial account information and government identification numbers for some of the victims.[14]  The data breach involved current and former customers.[15]

---

[11] Catalin Cimpanu, *T-Mobile Discloses Its Fourth Data Breach in Three Years*, <u>ZDNet</u> (Jan. 4, 2021), https://www.zdnet.com/article/t-mobile-discloses-its-fourth-data-breach-in-three-years/ (last accessed on Aug. 24, 2021).
[12] *Id.*
[13] *Id.*
[14] Catalin Cimpanu, *T-Mobile Says Hacker Gained Access to Employee Email Accounts, User Data*, <u>ZDNet</u> (Mar. 5, 2020), https://www.zdnet.com/article/t-mobile-says-hacker-gained-access-to-employee-email-accounts-user-data/ (last accessed on Aug. 24, 2021).
[15] *Id.*.

CLASS ACTION COMPLAINT– 8

LOEVY & LOEVY
100 S. KING STREET., #100-748
SEATTLE, WASHINGTON 98104
T: 312-243-5900, FAX: 312-243-5902

32.     In November 2019, Defendant experienced another data breach involving prepaid wireless account information.[16] The hackers obtained customer names, billing addresses, phone numbers, account numbers, rate plans and plan features.[17] Defendant advised victims to change account passwords and PIN codes.[18]

33.     In August 2018, hackers obtained the personal information of approximately 2 to 2.5 million of Defendant's customers.[19] Among the personal information obtained was customer names, account numbers, email addresses, phone numbers and billing ZIP codes.[20] Hackers used an API to obtain access to Defendant's servers.[21]

34.     Additionally, in May 2018, researchers found a bug in Defendant's website that allowed widespread access customers' personal data with just a phone number.[22] Through this vulnerability, anyone with internet access and a customer's phone number could access the customer's full name, physical address, billing account numbers and billing records.[23]

35.     Importantly, in February 2021, Defendant admitted that it could be "harmed by data loss or other security breaches" and that it was "subject to the threat of unauthorized access

---

[16] Catalin Cimpanu, *T-Mobile Discloses Security Breach Impacting Prepaid Customers*, <u>ZDNet</u> (Nov. 22, 2019), https://www.zdnet.com/article/t-mobile-discloses-security-breach-impacting-prepaid-customers/ (last accessed on Aug. 24, 2021).

[17] *Id.*

[18] *Id.*

[19] Charlie Osborne, *Hackers Help Themselves to Data Belonging to 2 Million T-Mobile Customers*, <u>ZDNet</u> (Aug. 24, 2018), https://www.zdnet.com/article/international-hackers-help-themselves-to-data-belonging-to-2-million-t-mobile-customers/ (last accessed on Aug. 24, 2021).

[20] *Id.*

[21] *Id.*

[22] *Id.*

[23] *Id.*

CLASS ACTION COMPLAINT– 9

LOEVY & LOEVY
100 S. KING STREET., #100-748
SEATTLE, WASHINGTON 98104
T: 312-243-5900, FAX: 312-243-5902

or disclosure of Confidential Information by state-sponsored parties, malicious actors, third parties or employees . . . or other security incidents that could compromise the confidentiality and integrity of Confidential Information." Defendant predicted that it "expect[ed] to continue to be the target of cyber-attacks, data breaches, or security breaches . . . ." Nevertheless, Defendant failed to prevent the Data Breach.

***Defendant's Duty to Safeguard Plaintiff's and Class Members' Data***

36.     At relevant times, Defendant required customers and potential customers to allow Defendant to obtain information about their credit histories and to share that information with credit reporting agencies. Among the personal information collected was customers' and potential customers' names, Social Security numbers and dates of birth – personal information that was obtained during the Data Breach and subsequently offered for sale.

37.     Defendant derived a benefit from the personal information it collected from customers and potential customers because it allowed Defendant to establish long-term relationships with those individuals and offer them credit with which they could finance or lease devices or accessories from Defendant.

38.     By obtaining, collecting, using and deriving a benefit from Plaintiff's and class members' personal information, Defendant assumed legal and equitable duties to those individuals, including the duty to protect Plaintiff's and class members' personal information from disclosure.

39.     Beyond Defendant's legal obligations to protect the confidentiality of Plaintiff's and class members' personal information, Defendant owed Plaintiff and class members a duty to protect their personal information as a result of representations made to them, including

LOEVY & LOEVY
100 S. KING STREET., #100-748
SEATTLE, WASHINGTON 98104
T: 312-243-5900, FAX: 312-243-5902

representations that Defendant cares about its customers and potential customers and would protect their data.

40.     At relevant times, Defendant knew: (a) the importance of safeguarding the personal information of customers and potential customers, including Plaintiff and class members, which it knew was highly sensitive; and (b) the foreseeable consequences – and ensuing significant injuries – in the event of a data breach.

41.     At relevant times, and as alleged above, Defendant was aware or reasonably should have been aware that the personal information collected, maintained and stored by Defendant was highly sensitive, susceptible to attack and, if improperly obtained, could be used by third parties for wrongful purposes such as identity theft and fraud.

42.     At relevant times, Defendant knew, or reasonably should have known, of the significant volume of personal information it received on a regular basis and the corresponding number of customers and potential customers who would be harmed by a data breach.

43.     Notwithstanding Defendant's knowledge of the highly sensitive nature of the personal information it collected and the fact that it knew that others would attempt to obtain that personal information without authorization, Defendant was negligent or reckless in its approach to safeguarding the personal information and the privacy of its customers and potential customers, including Plaintiff and class members.

44.     Indeed, Defendant stored the personal information in an unencrypted, plain-text format. Moreover, Defendant stored the personal information on its servers for decades, long after it served any useful purpose to Defendant.

*Defendant Failed to Comply with Federal Requirements*

45.     The Federal Trade Commission ("FTC") has instructed that the need for data security should be factored into all business decision-making.[24] To that end, the FTC recommends that companies: (a) timely dispose of personal information that is no longer needed; (b) require the use of complex passwords on networks; (c) monitor for suspicious activity thereon; and (d) implement security methods that have been industry-tested.[25]

46.     According to published FTC guidelines, businesses should: (a) protect customers' personal information – including encrypting information stored on computer networks and implementing policies to address security issues; (b) properly dispose of customer information when it is no longer needed; and (c) understand vulnerabilities on their network.[26]  According to the guidelines, businesses should also have systems in place to detect intrusions and expose breaches as soon as they occur.[27]

47.     Pursuant to Section 5 of the FTC Act (15 U.S.C. § 45), the FTC has brought numerous actions against businesses for their failure to protect customer data, alleging that the conduct constitutes an unfair act or practice. The dispositions of these actions further inform the obligations of businesses when it comes to data security.

---

[24]Federal Trade Commission, *Start With Security,* https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf (last accessed on Aug. 24, 2021).

[25] *Id.*

[26] Federal Trade Commission, *Protecting Personal Information: A Guide for Business*, https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf (last accessed on Aug. 24, 2021).

[27] *Id.*

CLASS ACTION COMPLAINT– 12

LOEVY & LOEVY
100 S. KING STREET., #100-748
SEATTLE, WASHINGTON 98104
T: 312-243-5900, FAX: 312-243-5902

48. At relevant times, Defendant knew of its obligation to protect the personal information of customers and potential customers, including Plaintiff and class members, as well as the consequences of its failure to do so.

49. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to customers' and potential customers' personal information constitutes an unfair act or practice in violation of the FTC Act.

**Plaintiff's and Class Members' Injuries and Damages**

50. As a result of the Data Breach, Plaintiff and class members have suffered and will continue to suffer severe consequences, as they are more likely to become victims of identity theft, cyber-crimes, social engineering and other means of targeting.

51. Defendant's failure to timely detect the Data Breach increased the risks and consequences Plaintiff and class members will suffer as a result of the Data Breach because cybercriminals had the opportunity to collect, use and sell the stolen data to the detriment of Plaintiff and class members.

52. Since learning of the Data Breach, and as a result of it, Plaintiff has taken the time to change her T-Mobile account password and PIN and begun to monitor her accounts for suspicious activity. Further, as a result of the Data Breach, Plaintiff has lost control over her sensitive personal information, including her Social Security number, which is now available for sale and, on information and belief, has been sold to criminals on the dark web.

53. On information and belief, based on receipt of a phone message left in a foreign language on her T-Mobile device and another device on her T-Mobile plan after the Data Breach, Plaintiff's sensitive personal information that was unlawfully obtained as a result of the Data Breach has been sold and is being used without Plaintiff's consent.

CLASS ACTION COMPLAINT– 13

LOEVY & LOEVY
100 S. KING STREET., #100-748
SEATTLE, WASHINGTON 98104
T: 312-243-5900, FAX: 312-243-5902

54. Given the breadth of sensitive personal information obtained during the Data Breach, a criminal who purchases Plaintiff's and/or class members' data can, among other things, use their identities to apply for credit, open financial accounts, gain access to sensitive accounts by having two factor authentication messages sent to devices controlled by the criminal and fraudulently file for unemployment benefits.

55. Because Social Security numbers were obtained and exfiltrated during the Data Breach, victims face unique harms. A Social Security number is the key to access much of a person's most sensitive personal information. Because so much information is tied to a person's Social Security number it is essentially immutable. Indeed, if a person receives a new Social Security number, the person may lose his/her credit history and not be able to get credit, rent an apartment, buy a home or open a bank account.

56. Defendant's wrongful actions and inaction have directly and proximately caused Plaintiff and class members to face the immediate and continuing increased risk of economic and non-economic damages and other actual harm for which they are entitled to compensation, including:

> a. loss of control over sensitive personal information;
>
> b. costs associated with the detection and prevention of identity theft;
>
> c. costs associated with spending time to address and mitigate the actual and future consequences of the Data Breach such as time taken from the enjoyment of one's life, and the inconvenience, nuisance, cost and annoyance of dealing with all issues resulting from the Data Breach;

CLASS ACTION COMPLAINT– 14

d. the imminent and certainly impending injury resulting from the potential fraud and identity theft posed by personal information being exposed for theft and sale on the dark web;

e. damages to, and diminution in value of, the personal information that Defendant was supposed to keep secure;

f. the loss of Plaintiff's and class members' privacy; and

g. overpayment to Defendant because Plaintiff and class members believed a portion of their payments would be utilized to implement and ensure adequate data security measures.

57. Because data thieves often delay using stolen information, Plaintiff and class members will continue to be at risk of the above-alleged harms well into the future.

58. Moreover, while Defendant has offered two years of identity protection services, those after-the-fact services only alert victims to issues that already have occurred and do not prevent the improper and unauthorized use of the sensitive personal information obtained as a result of the Data Breach.

## CLASS ACTION ALLEGATIONS

59. Plaintiff brings this action as a class action under Federal Rule of Civil Procedure 23, seeking damages and equitable relief on behalf of herself and the following classes:

a. **Nationwide Class:** All persons residing in the United States whose personal information was compromised as a result of the Data Breach.

b. **Intrusion Upon Seclusion Subclass:** All persons residing in the States of Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut,

CLASS ACTION COMPLAINT– 15

Delaware, Georgia, Hawaii, Idaho, Illinois, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Minnesota, Missouri, Nevada, New Hampshire, New Jersey, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, South Dakota, Texas, Utah, Vermont, Washington and West Virginia whose personal information was compromised as a result of the Data Breach.

c. **Illinois Subclass:** All persons residing in Illinois whose personal information was compromised as a result of the Data Breach.

60. Excluded from the class and subclasses are: (a) Defendant; (b) any parent, affiliate or subsidiary of Defendant; (c) any entity in which Defendant has a controlling interest; (d) any of Defendant's officers or directors; or (e) any successor or assign of Defendant. Also excluded are any judge or court personnel assigned to this case and members of their immediate families.

61. Plaintiff reserves the right to amend or modify the class definitions with greater specificity or division after having had an opportunity to conduct discovery.

62. **Numerosity.** While the exact number of Class Members is not known at this time, Defendant has acknowledged that the personal information of over 50 million customers and potential customers was obtained without authorization during the Data Breach. Consistent with Rule 23(a)(1), the proposed class and subclasses are therefore so numerous that joinder of all members is impracticable. Class Members may be identified through objective means, including objective data available to Defendant. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, social media and/or published notice

CLASS ACTION COMPLAINT– 16

LOEVY & LOEVY
100 S. KING STREET., #100-748
SEATTLE, WASHINGTON 98104
T: 312-243-5900, FAX: 312-243-5902

63. **Commonality and predominance.** Common questions of law and fact exist as to all class members. These common questions of law or fact predominate over any questions affecting only individual members of the proposed class or subclasses. Common questions include, but are not limited to, the following:

a.    Whether Defendant engaged in the wrongful conduct as alleged herein;

b.    Whether Defendant owed a duty to Plaintiff and class members to adequately protect their personal information;

c.    Whether Defendant willfully, recklessly or negligently breached its duty to Plaintiff and class members;

d.    Whether Defendant's conduct – including its failure to act – resulted in or was the proximate cause of the Data Breach;

e.    Whether Defendant's security measures to protect its computer systems were reasonable in light of the FTC data security recommendations and best practices recommended by security experts;

f.    Whether Defendant truthfully represented the nature and vulnerability of its security systems;

g.    Whether third parties obtained Plaintiff's and class members' personal information without authorization and then subsequently sold, copied, stored or released it;

h.    Whether Defendant failed to protect Plaintiff and class members by allowing unauthorized access to their personal information;

LOEVY & LOEVY
100 S. KING STREET., #100-748
SEATTLE, WASHINGTON 98104
T: 312-243-5900, FAX: 312-243-5902

i.  Whether Defendant engaged in unfair or deceptive trade practices by failing to disclose that it failed to properly safeguard Plaintiff's and class members' personal information;

j.  Whether Plaintiff and class members suffered damages as a proximate result of Defendant's conduct or failure to act; and

k.  Whether Plaintiff and class members are entitled to damages, equitable relief and other relief.

64.  **Typicality.**  Plaintiff's claims are typical of the claims of the class and subclasses she seeks to represent because Plaintiff and all class members have suffered similar injuries as a result of the same practices alleged herein. Plaintiff has no interests to advance adverse to the interests of the other class members.

65.  **Adequacy.**  Plaintiff will fairly and adequately protect the interests of the proposed class and subclasses and has retained as her counsel attorneys experienced in class actions and complex litigation.

66.  **Superiority.**  A class action is superior to other available means for the fair and efficient adjudication of this dispute. The injury suffered by each class member, while meaningful on an individual basis, may not be of such magnitude as to make the prosecution of individual actions against Defendant economically feasible. Even if class members could afford individual litigation, those actions would put immeasurable strain on the court system. Moreover, individual litigation of the legal and factual issues of the case would increase the delay and expense to all parties and the court system. A class action, however, presents far fewer management difficulties and provides the benefit of a single adjudication, economy of scale and comprehensive supervision by a single court.

CLASS ACTION COMPLAINT– 18

67.     In the alternative, the proposed class and subclasses may be certified because:

a.      The prosecution of separate actions by each individual member of the proposed class and subclasses would create a risk of inconsistent adjudications, which could establish incompatible standards of conduct for Defendant;

b.      The prosecution of individual actions could result in adjudications that as a practical matter would be dispositive of the interests of non-party class members or which would substantially impair their ability to protect their interests; and

c.      Defendant acted or refused to act on grounds generally applicable to the proposed class or subclasses, thereby making final and injunctive relief appropriate with respect to members of the proposed class and subclasses.

68.     Pursuant to Rule 23(c)(4), particular issues are appropriate for certification – namely the issues described in paragraph 63, above – because resolution of such issues would advance the disposition of the matter and the parties' interests therein.

**CLAIMS FOR RELIEF**

**COUNT ONE**
**(NEGLIGENCE)**
**(On behalf of the Nationwide Class and all Subclasses)**

69.     Plaintiff restates and realleges paragraphs 1 through 68, above, as though fully set forth herein.

70.     Defendant obtained Plaintiff's and class members' personal information and had a duty to exercise reasonable care in securing that information from unauthorized access or disclosure.

CLASS ACTION COMPLAINT– 19

71.     Defendant also had a duty to destroy Plaintiff's and class members' personal information within an appropriate amount of time after it was no longer required by Defendant in order to mitigate the risk of the stale personal information being compromised in a data breach.

72.     Further, Defendant had a duty to adequately protect its data servers, electronic systems and related systems and the personal information stored thereon.

73.     Once in possession and custody of Plaintiff's and class members' personal information, Defendant undertook and owed a duty of care to Plaintiff and class members to exercise reasonable care to secure and safeguard Plaintiff's and class members' personal information – which Defendant knew was private and confidential and should be protected as such – and to use commercially-reasonable methods to do so.

74.     Defendant owed a duty of care not to subject Plaintiff's and class members' personal information or Plaintiff and class members, themselves, to an unreasonable risk of harm from a data breach because Plaintiff and class members were foreseeable and probable victims of inadequate security practices.

75.     Defendant's duties arose: (a) from its relationship to Plaintiff and class members; (b) from its representations to Plaintiff and class members; (c) out of its possession and custody of Plaintiff's and class members' personal information; and (d) from industry custom.

76.     Through its actions and/or failures to act, Defendant unlawfully breached duties owed to Plaintiff and class members by failing to implement standard industry protocols and failing to exercise reasonable care to secure and keep private the personal information entrusted to Defendant, including allowing unauthorized access to the personal information and failing to provide adequate oversight over the personal information with which Defendant was entrusted

LOEVY & LOEVY
100 S. KING STREET., #100-748
SEATTLE, WASHINGTON 98104
T: 312-243-5900, FAX: 312-243-5902

despite knowing the foreseeable risk and likelihood of a data breach that would allow unauthorized third parties unfettered access to, and use of, Plaintiff's and class members' personal information without consent.

77. Through its actions and/or failures to act, Defendant allowed unmonitored and unrestricted access to unsecured personal information.

78. Through its actions and/or failures to act, Defendant failed to provide adequate supervision and oversight of the personal information with which it was entrusted, despite knowing the risk and foreseeable likelihood of a breach and misuse, which permitted unknown third parties to gather Plaintiff's and class members' personal information without consent.

79. Based on the publicity surrounding data breaches, at relevant times, Defendant knew or should have known the risks inherent in obtaining, collecting and storing personal information and the concomitant necessity for adequate security measures to protect that personal information.

80. At relevant times Defendant knew or should have known that its data servers, electronic systems and related systems failed to adequately safeguard Plaintiff's and class members' personal information, thereby creating a foreseeable risk that unauthorized third parties could and would gain access to Plaintiff's and class members' personal information.

81. Due to Defendant's knowledge that a breach of its data servers, electronic systems and related systems would damage millions of customers and potential customers, including Plaintiff and class members, Defendant had a duty to adequately protect its data servers, electronic systems and related systems and the personal information contained thereon.

82. Defendant had and has a special relationship with Plaintiff and class members. Plaintiff and class members were compelled to entrust Defendant with their personal

CLASS ACTION COMPLAINT– 21

LOEVY & LOEVY
100 S. KING STREET., #100-748
SEATTLE, WASHINGTON 98104
T: 312-243-5900, FAX: 312-243-5902

information in order to utilize Defendant's products and services. At relevant times, Plaintiff and class members understood that Defendant would take adequate security precautions to safeguard that personal information. Only Defendant had the ability to protect its data servers, electronic systems and related systems and the personal information stored thereon from attack.

83.     Defendant's own conduct also created a foreseeable risk of harm to Plaintiff and class members and to their personal information. Defendant's misconduct included failing to: (a) secure its data servers, electronic systems and related systems, despite knowing their vulnerabilities; (b) comply with industry standard security practices; (c) implement adequate system and event monitoring; and (d) implement the systems, policies and procedures necessary to prevent this type of data breach.

84.     Defendant breached the above-alleged duties to Plaintiff and class members by, among other things: (a) failing to provide fair, reasonable or adequate data servers, electronic systems and related systems and data security practices to safeguard Plaintiff's and class members' personal information; (b) creating a foreseeable risk of harm through the above-alleged misconduct; (c) failing to implement adequate security systems, protocols and practices sufficient to protect Plaintiff's and class members' personal information before and after learning of the Data Breach; (d) failing to utilize measures and practices that would allow for the timely detection of a data breach or other unauthorized access to personal information within its data servers, electronic systems or other systems; and (e) failing to comply with industry data security standards during the period of the Data Breach.

85.     Through Defendant's acts and omissions described herein, Defendant unlawfully breached its duty to use reasonable care to adequately protect and secure Plaintiff's and class members' personal information while it was within Defendant's possession or control.

CLASS ACTION COMPLAINT– 22

LOEVY & LOEVY
100 S. KING STREET., #100-748
SEATTLE, WASHINGTON 98104
T: 312-243-5900, FAX: 312-243-5902

86.     On information and belief, Defendant improperly and inadequately safeguarded Plaintiff's and class members' personal information in deviation of standard industry rules, regulations and practices at the time of the unauthorized access. Defendant's failure to take proper security measures to protect sensitive personal information as described herein created conditions conducive to a foreseeable, intentional criminal act – namely the unauthorized access of Plaintiff's and class members' personal information.

87.     Defendant's conduct was grossly negligent and departed from all reasonable standards of care, including but not limited to: (a) failing to adequately protect the personal information of Plaintiff and class members; (b) failing to conduct regular security audits; and (c) failing to provide adequate and appropriate supervision of persons having access to Plaintiff's and class members' personal information.

88.     Neither Plaintiff nor other class members contributed to the Data Breach and subsequent misuse of their personal information as described herein.

89.     Defendant's failure to exercise reasonable care in safeguarding personal information by adopting appropriate security measures, including proper encryption storage techniques, was the direct and proximate cause of Plaintiff's and class members' personal information being accessed and stolen through the Data Breach.

90.     Defendant breached its duties to Plaintiff and class members by failing to provide fair, reasonable and adequate computer systems and data security practices to safeguard Plaintiff's and class members' personal information.

91.     As a direct and proximate result of Defendant's breach of duties, Plaintiff and class members suffered damages including, but not limited to: (a) damages from lost time and the effort required to mitigate the actual and potential impact of the Data Breach on their lives,

CLASS ACTION COMPLAINT– 23

LOEVY & LOEVY
100 S. KING STREET., #100-748
SEATTLE, WASHINGTON 98104
T: 312-243-5900, FAX: 312-243-5902

including by changing their T-Mobile account passwords and PINs, closely reviewing and monitoring their credit reports and/or placing freezes on their credit reports; (b) damages from identity theft, which may take months, if not years, to discover and detect, given the far-reaching, adverse and detrimental consequences of identity theft and loss of privacy; and (c) damages from losing control over their sensitive personal information. The nature of other forms of economic and non-economic damage and injury may take years to detect. Based, in part, on Defendant's concealment and omission of material information related to the extent and gravity of the Data Breach, the full and potential scope of the Data Breach is not yet fully known and can only be assessed after a thorough investigation of the facts and events surrounding the theft alleged above.

## COUNT TWO
### (NEGLIGENCE *PER SE*)
### (On behalf of the National Class and all Subclasses)

92. Plaintiff restates and realleges paragraphs 1 through 68, above, as though fully set forth herein.

93. Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including the unfair act or practice by businesses of failing to use reasonable measures to protect personal information. The FTC publications and dispositions alleged above further define Defendant's duty under the FTC Act.

94. As alleged herein, Defendant violated Section 5 of the FTC Act by failing to use reasonable measures to protect personal information and not complying with industry standards. Defendant's conduct was particularly unreasonable given the volume of personal information it obtained and stored. The consequences of a data breach – including the damages Plaintiff and class members would suffer – were foreseeable to Defendant.

CLASS ACTION COMPLAINT– 24

95.     Defendant's violation of Section 5 of the FTC Act constitutes negligence *per se*.

96.     Plaintiff and class members are within the class of persons the FTC Act is intended to protect.

97.     The harm that occurred as a result of the Data Breach is within the FTC's jurisdiction. As alleged herein, the FTC has brought enforcement actions against businesses that, like Defendant here, have failed to employ reasonable data security measures and engaged in unfair and deceptive practices, resulting in the same harm suffered by Plaintiff and class members.

98.     As a direct and proximate result of Defendant's breach of duties, Plaintiff and class members suffered damages including, but not limited to: (a) damages from lost time and the effort required to mitigate the actual and potential impact of the Data Breach on their lives, including by changing the passwords and PINs on their T-Mobile accounts, closely reviewing and monitoring their credit reports and/or placing freezes on their credit reports; (b) damages from identity theft, which may take months, if not years, to discover and detect, given the far-reaching, adverse and detrimental consequences of identity theft and loss of privacy; and (c) damages from losing control over their sensitive personal information.

99.     Additionally, as a direct and proximate result of Defendant's negligence *per se*, Plaintiff and class members have suffered and will suffer the continued risks of exposure of their personal information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to implement appropriate and adequate measures to protect that personal information. The nature of other forms of economic damage and injury may take years to detect. Based, in part, on Defendant's concealment and omission of material information related to the extent and gravity of the Data Breach, the full and potential

LOEVY & LOEVY
100 S. KING STREET., #100-748
SEATTLE, WASHINGTON 98104
T: 312-243-5900, FAX: 312-243-5902

scope of the Data Breach can only be assessed after a thorough investigation of the facts and events surrounding the theft alleged above.

## COUNT THREE
## BREACH OF IMPLIED CONTRACT
### (On behalf of the National Class and all Subclasses)

100.     Plaintiff restates and realleges paragraphs 1 through 68, above, as though fully set forth herein.

101.     Defendant provided cellular services and/or devices to Plaintiff and class members in return for monetary payments, access to their personal information and other valuable consideration.

102.     When Plaintiff and class members provided their personal information to Defendant in return for the purported benefits, as alleged above, Plaintiff and class members, on the one hand, and Defendant, on the other, entered into mutually agreed-upon implied contracts pursuant to which Defendant agreed to take reasonable steps to secure and safeguard the personal information.

103.     Plaintiff and class members fully performed their obligations under the implied contracts alleged above.

104.     Defendant breached the implied contracts alleged above by failing to employ reasonable and adequate privacy practices and measures, resulting in the disclosure of the personal information of Plaintiff and class members for purposes not required or permitted under the implied contracts.

105.     Defendant further breached the implied contracts alleged above by failing to ensure that the personal information of Plaintiff and class members was only used for the agreed-upon purpose.

CLASS ACTION COMPLAINT– 26

LOEVY & LOEVY
100 S. KING STREET., #100-748
SEATTLE, WASHINGTON 98104
T: 312-243-5900, FAX: 312-243-5902

106.     As a direct and proximate result of Defendant's breaches of the implied contracts alleged above, Plaintiff and class members sustained actual losses as alleged above.

107.     Plaintiff and class members suffered harm as a result of Defendant's breach of the implied contracts alleged above because their personal information was compromised, placing Plaintiff and class members at a greater risk of identity theft, cyber-crimes, social engineering, tracking, or other means of being targeted; and because their personal information was disclosed to unauthorized third parties without their consent. Additionally, the value of Plaintiff's and class members' personal information has been diminished in that it is now in the hands of unauthorized third parties who have posted it for sale on the dark web or can otherwise utilize it for their own interests.  Further, Plaintiff and class members paid Defendant, in part, to protect their sensitive personal information. Because Defendant failed to perform its obligation, Plaintiff and class members have been damaged in the amount of their payments fairly attributable to Defendant's obligation to safely secure Plaintiff's and class members' personal information.

108.     Additionally, as a result of Defendant's breach, Plaintiff and class members have suffered and will suffer the continued risks of exposure of their personal information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to implement appropriate and adequate measures to protect that personal information. The nature of other forms of economic damage and injury may take years to detect. Based, in part, on Defendant's concealment and omission of material information related to the extent and gravity of the Data Breach, the full and potential scope of the Data Breach can only be assessed after a thorough investigation of the facts and events surrounding the theft mentioned above.

109.    Defendant's breach of the implied contracts alleged above was a direct and legal cause of Plaintiff's and class members' injuries and damages as alleged above.

## COUNT FOUR
## UNJUST ENRICHMENT
### (On behalf of National Subclass and all Subclasses)

110.    Plaintiff restates and realleges paragraphs 1 through 68, above, as though fully set forth herein.

111.    Plaintiff and class members conferred a monetary benefit on Defendant – namely, they provided and entrusted their personal information to Defendant.

112.    In exchange, Plaintiff and class members should have been entitled to have Defendant protect their personal information with adequate data security.

113.    Defendant appreciated, accepted and retained the benefit bestowed upon it under inequitable and unjust circumstances arising from Defendant's conduct toward Plaintiff and class members as described herein – namely: (a) Plaintiff and class members conferred a benefit on Defendant, and Defendant accepted or retained that benefit; and (b) Defendant used Plaintiff's and class members' personal information for business purposes.

114.    Defendant failed to secure Plaintiff's and class members' personal information and, therefore, did not provide full compensation for the benefit Plaintiff and class members provided.

115.    Defendant acquired the personal information through inequitable means in that it failed to disclose the inadequate security practices previously alleged, as well as failed to destroy or otherwise purge the personal information from its data servers, electronic systems and related systems after Defendant no longer had a legitimate business purpose to maintain that personal information.

CLASS ACTION COMPLAINT– 28

116. Plaintiff and class members have no adequate remedy at law.

117. Under the circumstances, it would be unjust and unfair for Defendant to be permitted to retain any of the benefits that Plaintiff and class members conferred on Defendant.

118. Under the principles of equity and good conscience, Defendant should not be permitted to retain the personal information belonging to Plaintiff and class members because Defendant failed to implement the data management and security measures that industry standards mandate.

119. Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and class members, proceeds that it unjustly received from the use of Plaintiff's and class members' personal information.

## COUNT FIVE
### INTRUSION UPON SECLUSION
### (On behalf of the Intrusion Upon Seclusion Subclass)

120. Plaintiff restates and realleges paragraphs 1 through 68, above, as though fully set forth herein.

121. Plaintiff and class members had a legitimate expectation of privacy to their personal information and were entitled to protection of this information against disclosure to unauthorized third parties.

122. Defendant owed a duty to Plaintiff and class members to keep their personal information confidential.

123. Defendant failed to protect Plaintiff's and class members' personal information stored within its data servers, electronic systems and related systems and released it to unknown and unauthorized third parties.

LOEVY & LOEVY
100 S. KING STREET., #100-748
SEATTLE, WASHINGTON 98104
T: 312-243-5900, FAX: 312-243-5902

124.     By way of Defendant's failure to protect the personal information in its data servers, electronic systems and related systems, Defendant allowed unauthorized and unknown third parties access to and examination of the personal information of Plaintiff and class members.

125.     The unauthorized release to, custody of and examination by unauthorized third parties of the personal information of Plaintiff and class members – especially where the information includes Social Security numbers, government identification numbers, driver's license numbers and dates of birth – is highly offensive to a reasonable person.

126.     The intrusion was into a place or thing that was private and entitled to be private. While Plaintiff and class members were compelled to disclose their personal information to Defendant in order to receive access to Defendant's products and services, at all times the personal information was supposed to be kept confidential and protected from unauthorized disclosure. It was reasonable for Plaintiff and class members to believe that such information would be kept private and confidential and would not be disclosed without their authorization.

127.     The Data Breach at the hands of Defendant constitutes an unauthorized intrusion or prying into Plaintiff and class members' seclusion, and the intrusion was of a kind that would be highly offensive to a reasonable person.

128.     Defendant acted with a knowing state of mind when it permitted the Data Breach because it had actual knowledge that its information security practices were inadequate and insufficient.

129.     As a direct and proximate result of the above acts and omissions of Defendant, the personal information of Plaintiff and class members was disclosed to third parties without authorization, causing Plaintiff and class members to suffer damages, anguish and suffering.

CLASS ACTION COMPLAINT– 30

LOEVY & LOEVY
100 S. KING STREET., #100-748
SEATTLE, WASHINGTON 98104
T: 312-243-5900, FAX: 312-243-5902

130.     Unless and until enjoined and restrained by order of this Court, Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and class members in that the personal information maintained by Defendant can be viewed, distributed and used by unauthorized persons. Plaintiff and class members have no adequate remedy at law for the injuries in that a judgment for monetary damages will not end the invasion of privacy for Plaintiff and class members.

## COUNT SIX
### ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT
### 815 ILCS 505/1, *et seq.*
### (On behalf the Illinois Subclass)

131.     Plaintiff restates and realleges paragraphs 1 through 68, above, as though fully set forth herein.

132.     Defendant is a "person" as defined by 815 ILCS 505/1(c).

133.     Defendant's conduct as alleged herein was in the conduct of "trade" or "commerce" as defined by 815 ILCS 505/1(f).

134.     Defendant's deceptive, unfair and unlawful trade acts or practices, in violation of 815 ILCS 505/2,  include:

a.     Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff's and Illinois Subclass Members' personal information, which was a direct and proximate cause of the Data Breach;

b.     Failing to identify foreseeable security and privacy risks and remediate identified security and privacy risks, with each failure being a direct and proximate cause of the Data Breach;

LOEVY & LOEVY
100 S. KING STREET., #100-748
SEATTLE, WASHINGTON 98104
T: 312-243-5900, FAX: 312-243-5902

c.       Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Illinois Subclass Members' personal information, including duties imposed by the FTC Act, 15 U.S.C. § 45; and the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/2(a), which was a direct and proximate cause of the Data Breach;

d.       Misrepresenting that it would protect the privacy and confidentiality of Plaintiff's and Illinois Subclass Members' personal information, including by implementing and maintaining reasonable security measures;

e.       Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Illinois Subclass Members' personal information, including duties imposed by the FTC Act, 15 U.S.C. § 45; and the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/2(a), which was a direct and proximate cause of the Data Breach;

f.       Omitting, suppressing and concealing the material fact that it did not reasonably or adequately secure Plaintiff's and Illinois Subclass Members' personal information; and

g.       Omitting, suppressing and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Illinois Subclass Members' personal information, including duties imposed by the FTC Act, 15 U.S.C.

CLASS ACTION COMPLAINT– 32

§ 45; and the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/2(a), which was a direct and proximate cause of the Data Breach.

135.    Defendant's representations and omissions were material because they were likely to deceive reasonable persons about the adequacy of Defendant's data security and ability to protect the confidentiality of persons' personal information.

136.    Defendant intended to mislead Plaintiff and Illinois Subclass Members and induce them to rely on its misrepresentations and omissions.

137.    The above unfair and deceptive practices and acts by Defendant were immoral, unethical, oppressive and unscrupulous. These acts caused substantial injury to Plaintiff and Illinois Subclass Members that they could not reasonably avoid; this substantial injury outweighed any benefits to competition.

138.    Defendant acted intentionally, knowingly and maliciously to violate Illinois' Consumer Fraud and Deceptive Business Practices Act and recklessly disregarded Plaintiff's and Illinois Subclass Members' rights.

139.    As a direct and proximate result of Defendant's unfair, unlawful and deceptive practices and acts, Plaintiff and Illinois Subclass Members have suffered and will continue to suffer injury, ascertainable losses of money or property and monetary and non-monetary damages, including: (a) the value of Plaintiff's and class members' payments to Defendant fairly attributable to Defendant's obligation to safely and securely protect Plaintiff's and class members' personal information; (b) from fraud and identity theft; (c) from an increased, imminent risk of fraud and identity theft; and (d) from loss of value of their personal information.

LOEVY & LOEVY
100 S. KING STREET., #100-748
SEATTLE, WASHINGTON 98104
T: 312-243-5900, FAX: 312-243-5902

140.    Plaintiff and Illinois Subclass Members seek all monetary and non-monetary relief allowed by law, including damages, restitution, punitive damages, injunctive relief and reasonable attorneys' fees and costs.

**COUNT SEVEN**
**ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT**
**815 ILCS 510/1, *et seq.***
**(On behalf the Illinois Subclass)**

141.    Plaintiff restates and realleges paragraphs 1 through 68, above, as though fully set forth herein.

142.    Defendant is a "person" as defined by 815 ILCS 510/1(5).

143.    Defendant engaged in deceptive trade practices in the conduct of its business in violation of 815 ILCS 510/2(a), including:

a.    Representing that goods or services have characteristics that they do not have;

b.    Representing that goods or services are of a particular standard, quality or grade if they are of another;

c.    Advertising goods or services with intent not to sell them as advertised; and

d.    Engaging in conduct that creates a likelihood of confusion or misunderstanding.

144.    Defendant's deceptive trade practices include:

a.    Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff's and Illinois Subclass Members' personal information, which was a direct and proximate cause of the Data Breach;

CLASS ACTION COMPLAINT– 34

b.      Failing to identify foreseeable security and privacy risks and remediate identified security and privacy risks, with each failure being a direct and proximate cause of the Data Breach;

c.      Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Illinois Subclass Members' personal information, including duties imposed by the FTC Act, 15 U.S.C. § 45; and the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2, which was a direct and proximate cause of the Data Breach;

d.      Misrepresenting that it would protect the privacy and confidentiality of Plaintiff's and Illinois Subclass Members' personal information, including by implementing and maintaining reasonable security measures;

e.      Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Illinois Subclass Members' personal information, including duties imposed by the FTC Act, 15 U.S.C. § 45; and the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2, which was a direct and proximate cause of the Data Breach;

f.      Omitting, suppressing and concealing the material fact that it did not reasonably or adequately secure Plaintiff's and Illinois Subclass Members' personal information; and

LOEVY & LOEVY
100 S. KING STREET., #100-748
SEATTLE, WASHINGTON 98104
T: 312-243-5900, FAX: 312-243-5902

g. Omitting, suppressing and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Illinois Subclass Members' personal information, including duties imposed by the FTC Act, 15 U.S.C. § 45; and the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2, which was a direct and proximate cause of the Data Breach.

145. Defendant's representations and omissions were material because they were likely to deceive reasonable persons about the adequacy of Defendant's data security and ability to protect the confidentiality of persons' personal information.

146. The above unfair and deceptive practices and acts by Defendant were immoral, unethical, oppressive and unscrupulous. These acts caused substantial injury to Plaintiff and Illinois Subclass Members that they could not reasonably avoid; this substantial injury outweighed any benefits to competition.

147. As a direct and proximate result of Defendant's unfair, unlawful and deceptive practices and acts, Plaintiff and Illinois Subclass Members have suffered and will continue to suffer injury, ascertainable losses of money or property and monetary and non-monetary damages, including: (a) the value of Plaintiff's and class members' payments to Defendant fairly attributable to Defendant's obligation to safely and securely protect Plaintiff's and class members' personal information; (b) from fraud and identity theft; (c) from an increased, imminent risk of fraud and identity theft; and (d) from loss of value of their personal information.

LOEVY & LOEVY
100 S. KING STREET., #100-748
SEATTLE, WASHINGTON 98104
T: 312-243-5900, FAX: 312-243-5902

148.    Plaintiff and Illinois Subclass Members seek all monetary and non-monetary relief allowed by law, including injunctive relief and reasonable attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and on behalf of the class and subclasses, respectfully seeks from the Court the following relief:

a.    Certification of the class and subclasses as requested herein;

b.    Appointment of Plaintiff as class representative and her undersigned counsel as class counsel;

c.    An award of damages for Plaintiff and members of the proposed class and subclasses, including punitive damages;

d.    An award of equitable, injunctive and declaratory relief for Plaintiff and members of the proposed class and subclasses, including an injunction barring Defendant's insufficient data protection practices at issue herein, requiring Defendant to implement data protection practices consistent with industry standards, and barring Defendant's continuation of its unlawful business practices as alleged herein;

e.    An order declaring that Defendant's acts and practices with respect to the safekeeping of personal information are negligent;

f.    Award Plaintiff and members of the proposed class and subclasses pre-judgment and post-judgment interest as permitted by law;

g.    Award Plaintiff and members of the proposed class and subclasses reasonable attorneys' fees and costs of suit; including expert witness fees; and

CLASS ACTION COMPLAINT– 37

LOEVY & LOEVY
100 S. KING STREET., #100-748
SEATTLE, WASHINGTON 98104
T: 312-243-5900, FAX: 312-243-5902

h.      Award Plaintiff and members of the proposed class and subclasses any

further relief the Court deems proper.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure

38(b) on all issues so triable.

Dated this 26th day of August, 2021

VALERIE ROGOFF, for herself
and others similarly situated,

By: _____

David B. Owens, WSBA #53856
*Attorney for Plaintiffs*

David B. Owens
LOEVY & LOEVY
100 S. King Street, Suite 100
Seattle, WA 98104
david@loevy.com

Michael Kanovitz*
Scott R. Drury*
LOEVY & LOEVY
311 N. Aberdeen, 3rd Floor
Chicago, Illinois 60607
312.243.5900
mike@loevy.com
drury@loevy.com

* *pro hac vice* applications forthcoming

CLASS ACTION COMPLAINT– 38