# EXHIBIT 6

JURYDEMAND

# U.S. District Court
## United States District Court for the Western District of Washington (Seattle)
## CIVIL DOCKET FOR CASE #: 2:21-cv-01169

| | |
|---|---|
| Harper et al | Date Filed: 08/27/2021 |
| Assigned to: | Jury Demand: Plaintiff |
| Cause: 28:1332 Diversity | Nature of Suit: 890 Other Statutory Actions |
| | Jurisdiction: Federal Question |

**Plaintiff**

| | | |
|---|---|---|
| **Michael Harper** | represented by | **Kaleigh N.B. Powell** |
| | | TOUSLEY BRAIN STEPHENS |
| | | 1200 FIFTH AVE STE 1700 |
| | | SEATTLE, WA 98101 |
| | | 206-682-5600 |
| | | Email: kpowell@tousley.com |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |
| | | |
| | | **Kim D Stephens** |
| | | TOUSLEY BRAIN STEPHENS |
| | | 1200 FIFTH AVE STE 1700 |
| | | SEATTLE, WA 98101 |
| | | 206-682-5600 |
| | | Email: kstephens@tousley.com |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |
| | | |
| | | **Jason T Dennett** |
| | | TOUSLEY BRAIN STEPHENS |
| | | 1200 FIFTH AVE STE 1700 |
| | | SEATTLE, WA 98101 |
| | | 206-682-5600 |
| | | Email: jdennett@tousley.com |
| | | *ATTORNEY TO BE NOTICED* |

**Plaintiff**

| | | |
|---|---|---|
| **Sue Harper** | represented by | **Kaleigh N.B. Powell** |
| | | (See above for address) |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |
| | | |
| | | **Kim D Stephens** |
| | | (See above for address) |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |

**Jason T Dennett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

| | | |
|---|---|---|
| **Melanie Jaquess** | represented by | **Kaleigh N.B. Powell** |

**Kaleigh N.B. Powell**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kim D Stephens**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jason T Dennett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

| | | |
|---|---|---|
| **Chuck Sallade** | represented by | **Kaleigh N.B. Powell** |

**Kaleigh N.B. Powell**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kim D Stephens**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jason T Dennett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

| | | |
|---|---|---|
| **Michael Malone** | represented by | **Kaleigh N.B. Powell** |

**Kaleigh N.B. Powell**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kim D Stephens**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jason T Dennett**
(See above for address)
*ATTORNEY TO BE NOTICED*

## V.

**Defendant**

**T-Mobile US Inc**

| Date Filed | # | Docket Text |
|---|---|---|
| 08/27/2021 | 1 | COMPLAINT against defendant(s) All Plaintiffs with JURY DEMAND (Receipt # AWAWDC-7227839) Attorney Jason T Dennett added to party Michael Harper(pty:pla), Attorney Jason T Dennett added to party Sue Harper(pty:pla), Attorney Jason T Dennett added to party Melanie Jaquess(pty:pla), Attorney Jason T Dennett added to party Michael Malone(pty:pla), Attorney Jason T Dennett added to party Chuck Sallade(pty:pla), filed by Michael Harper, Sue Harper, Melanie Jaquess, Michael Malone, Chuck Sallade. (Attachments: # 1 Civil Cover Sheet, # 2 Summons)(Dennett, Jason) (Attachment 1 replaced to flatten malformed PDF on 8/27/2021) (STP). (Entered: 08/27/2021) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 08/30/2021 10:23:24 | | |
| **PACER Login:** | BJVahle132 | **Client Code:** | 11360001 |
| **Description:** | Docket Report | **Search Criteria:** | 2:21-cv-01169 |
| **Billable Pages:** | 2 | **Cost:** | 0.20 |

**UNITED STATES DISTRICT COURT**

**FOR THE WESTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| MICHAEL HARPER, SUE HARPER, MELANIE JAQUESS, CHUCK SALLADE, AND MICHAEL MALONE, Individually and on Behalf of All Others Similarly Situated, | Case No.: |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | |
| T-MOBILE US, INC. | **DEMAND FOR JURY TRIAL** |
| Defendant. | |

Plaintiffs Michael Harper, Sue Harper, Melanie Jaquess, Chuck Sallade, and Michael Malone ("Plaintiffs") on behalf of themselves and all others similarly situated, by and through the undersigned counsel, bring this action against T-Mobile US, Inc. Plaintiffs allege as follows, upon personal knowledge of facts pertaining to themselves, and on information and belief as to all other matters.

**I.  SUMMARY OF THE ACTION**

1.  On August 15, 2021, reports based on an internet forum post indicated that the personal identifying information ("PII") of millions of customers of T-Mobile US, Inc. ("T-Mobile," the "Company," or "Defendant") was being offered for sale on the internet in exchange

CLASS ACTION COMPLAINT - 1

for approximately $270,000 worth of bitcoin. T-Mobile, the second largest cellular company in the United States, with approximately 105 million customers, indicated initially that it was reviewing reports that its networks had been hacked. Then, on August 16, 2021, T-Mobile acknowledged that its network had been hacked and indicated that it was working to determine if the PII of T-Mobile customers had been accessed and if so, the extent of that access. On August 18, 2021, T-Mobile provided an additional update, acknowledging that the PII of approximately 40 million "former or prospective customers" who had previously applied for credit in order to obtain T-Mobile postpaid accounts had been accessed in the T-Mobile Data Breach. The T-Mobile Data Breach resulted in the unauthorized access by hackers of highly sensitive PII, including "names, drivers' licenses, government identification numbers, Social Security numbers, dates of birth, T-Mobile prepaid PINs [], addresses and phone number(s)."[1] The data accessed in the T-Mobile Data Breach presents a very high and continuing risk of fraud and/or identity theft for the millions of consumers, including Plaintiffs and Class Members, who entrusted their PII to T-Mobile.

2.   As the target of many data breaches in the past, T-Mobile knew its systems were vulnerable to attack. Yet it failed to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect its customers' PII, yet again putting millions of customers at great risk of scams and identity theft. Its customers expected and deserved better from the second largest wireless provider in the country.

3.   Plaintiffs now seek compensation under the state statutes identified below and principles of common law negligence, unjust enrichment, breach of implied contract, and breach of confidence, for their damages and those of fellow class members. Plaintiffs also seek injunctive relief to ensure that T-Mobile cannot continue to put its customers at risk.

## II.   PARTIES

4.   Plaintiffs Michael Harper and Sue Harper (the "Harpers" or "Mr. and Mrs. Harper") are citizens of California, residing in Lakeside, San Diego Country, California. As

---

[1]    Our Response to the Data Breach (Aug 2021) | T-Mobile, last visited August 26, 2021.

CLASS ACTION COMPLAINT - 2

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 ● FAX 206.682.2992

current T-Mobile customers since at least 2018, Mr. and Mrs. Harper believe their PII was accessed without authorization, exfiltrated, and/or stolen in the T-Mobile Data Breach. Mr. & Mrs. Harper were customers of Sprint prior to its acquisition by T-Mobile in 2020. In mid-2021, Mr. and Mrs. Harper visited a T-Mobile store and, in the course of acquiring new cellular phones, provided critical PII to T-Mobile. Mr. and Mrs. Harper learned of the T-Mobile Data Breach through the news media. Since learning of the T-Mobile Data Breach, Mr. and Mrs. Harper have taken steps to secure their PII and protect their financial accounts and credit scores, including reviewing their credit reports. Mr. and Mrs. Harper are emotionally distressed as a consequence of the unauthorized data breach and invasion of privacy, the exposure of their PII, and their consequent fear of misuse, exploitation, and financial harm. As a direct and proximate result of Defendant's unlawful conduct, Mr. and Mrs. Harper are now burdened with the continuing need and effort to take affirmative action to protect themselves from identity theft and related harm, which thereby necessitates the expenditure of time and money that they would otherwise not have incurred but for the Defendant's negligence and unlawful conduct.

5.     Melanie Jaquess is a citizen of California, residing in San Diego County. In approximately July 2010, Ms. Jaquess established a wireless account with T-Mobile. In order to establish said account, Ms. Jaquess was required to provide critical PII to T-Mobile, including her name, address, date of birth, Social Security number, and other billing and contact information. On August 20, 2021, Ms. Jaquess learned of the T-Mobile Data Breach through a text message sent to her mobile phone by T-Mobile, notifying her that her PII was exposed in the T-Mobile Data Breach; researching the internet concerning the Data Breach; discussing the breach with her family; reviewing credit reports and financial account statements for any indications of actual or attempted identity theft or fraud; and researching credit monitoring and identity theft protection services offered by Defendant. This is valuable time Plaintiff Jaquess otherwise could have and would have spent on other activities, including but not limited to operating her small business. Ms. Jaquess will have to continue to review her financial and credit account statements for evidence of unauthorized activity for years into the future. Ms. Jaquess is

CLASS ACTION COMPLAINT - 3

1  emotionally distressed as a consequence of the unauthorized data breach and invasion of privacy,

2  the exposure of her PII, and his consequent fear of misuse, exploitation, and financial harm. As a

3  direct and proximate result of Defendant's unlawful conduct, Ms. Jaquess is now burdened with

4  the continuing need and effort to take affirmative action to protect herself from identity theft and

5  related harm, which thereby necessitates the expenditure of time and money that she would

6  otherwise not have incurred but for the Defendant's negligence and unlawful conduct.

7        6.      Chuck Sallade is a citizen of Iowa residing in West Des Moines, Dallas County.

8  As a current T-Mobile customer since at least 2018, Mr. Sallade believes his PII was accessed

9  without authorization, exfiltrated, and/or stolen in the T-Mobile Data Breach. On May 25, 2014,

10  Mr. Sallade established a wireless account with T-Mobile. In order to establish said account, Mr.

11  Sallade was required to provide critical PII to T-Mobile, including his name, address, date of

12  birth, Social Security number, and other billing and contact information. On August 16, 2021,

13  Mr. Sallade learned of the T-Mobile Data Breach through internet news and CNN. On August 23,

14  2021, Mr. Sallade received notice from T-Mobile that his PII was exposed in the T-Mobile Data

15  Breach. Since learning of the T-Mobile Data Breach, Mr. Sallade has taken steps to secure his PII

16  and protect his financial accounts and credit scores, including credit monitoring using Credit

17  Karma. As a result of the data breach and T-Mobile's deficient notice, Mr. Sallade will have to

18  continue to review his financial and credit account statements for evidence of unauthorized

19  activity for years into the future. Mr. Sallade is emotionally distressed as a consequence of the

20  unauthorized data breach and invasion of privacy, the exposure of his PII, and his consequent fear

21  of misuse, exploitation, and financial harm. As a direct and proximate result of Defendant's

22  unlawful conduct, Mr. Sallade is now burdened with the continuing need and effort to take

23  affirmative action to protect himself from identity theft and related harm, which thereby

24  necessitates the expenditure of time and money that he would otherwise not have incurred but for

25  the Defendant's negligence and unlawful conduct.

26        7.      Michael Malone is a citizen of Texas, residing in Collin County. As a current T-

27  Mobile customer since at least 2018, Mr. Malone believes his PII was accessed without

28

CLASS ACTION COMPLAINT - 4

authorization, exfiltrated, and/or stolen in the T-Mobile Data Breach. Mr. Malone established service with T-Mobile in July 2004 and has maintained service since. In order to sign up for said account Mr. Malone was required to provide critical PII to T-Mobile, including his name, address, date of birth, Social Security number, and other billing and contact information. On August 18, 2021, Mr. Malone learned of the T-Mobile Data Breach through the news media and thereafter received notice from T-Mobile that his PII was exposed in the T-Mobile Data Breach. Mr. Malone is taking steps to secure his PII and protect his financial accounts and credit scores. As a result of the data breach and T-Mobile's deficient notice, Mr. Malone will have to continue to review his financial and credit account statements for evidence of unauthorized activity for years into the future. Mr. Malone is emotionally distressed as a consequence of the unauthorized data breach and invasion of privacy, the exposure of his PII, and his consequent fear of misuse, exploitation, and financial harm. As a direct and proximate result of Defendant's unlawful conduct, Mr. Malone is now burdened with the continuing need and effort to take affirmative action to protect himself from identity theft and related harm, which thereby necessitates the expenditure of time and money that he would otherwise not have incurred but for the Defendant's negligence and unlawful conduct.

8.      Defendant T-Mobile US, Inc., is a provider of wireless services, including, but not limited to, cellular telephone service and streaming media services. T-Mobile is headquartered at 12920 SE 38th Street, Bellevue, Washington, and incorporated in Delaware. T-Mobile is the second largest provider of wireless services in the United States, with more than 104.8 million subscribers as of the end of the second quarter of 2021.

**III.     JURISDICTION**

9.      This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because the matter in controversy, exclusive of interest and costs, exceeds the sum value of $5,000,000.00, consists of putative class membership of greater than 100 members, and is a class action in which some of the members of the Class, including the Plaintiffs, are citizens of states different than that of Defendant.

CLASS ACTION COMPLAINT - 5

10.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant is authorized to conduct business within this District, is headquartered in this District, has intentionally availed itself of the laws in this District, and conducts substantial business, including acts underlying the allegations of this complaint, in this District.

## IV.     STATEMENT OF FACTS

### A.     T-Mobile Background

11.     T-Mobile is the second largest provider of wireless services in the United States. With 104.8 million subscribers as of June 30, 2021, T-Mobile describes itself as the "Un-carrier," "disrupt[ing] the wireless communications services industry, by actively engaging with and listening to our customers and eliminating their existing pain points, including providing them with added value, an exceptional experience and implementing signature Un-carrier initiatives that have changed wireless for good." T-Mobile claims to have "a relentless customer experience focus, consistently leading the wireless industry in customer care . . . ."

12.     Customers of T-Mobile are required to provide a broad range of PII to T-Mobile in order to obtain T-Mobile wireless services. This information can include, *inter alia*, names, addresses, credit card and/or debit card information, birth dates, drivers' license images and/or numbers, and Social Security numbers. In the wrong hands, this information is easy fodder for identity theft. As a result, entities like T-Mobile that collect and maintain the most sensitive of PII have a duty to ensure that they are taking adequate steps to protect that data from unauthorized disclosure and to carefully monitor their computer networks to identify any intrusion efforts and address them **before** hackers are successful in breaching T-Mobile's systems.

13.     T-Mobile is well aware of the high risk posed to its customers by data breaches. Indeed, it a Form 10-K, filed with the Securities Exchange Commission, T-Mobile disclosed this very risk, stating:

> Our business involves the receipt, storage and transmission of our customers' confidential information, including sensitive personal information and payment card information, confidential information about our employees and suppliers, and other sensitive information about our Company, such as our business plans, transactions and intellectual property (collectively, "Confidential Information"). Unauthorized access

CLASS ACTION COMPLAINT - 6

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

to Confidential Information may be difficult to anticipate, detect, or prevent, particularly given that the methods of unauthorized access constantly change and evolve. *We are subject to the threat of unauthorized access or disclosure of Confidential Information by state-sponsored parties, malicious actors, third parties or employees, errors or breaches by third-party suppliers, or other security incidents that could compromise the confidentiality and integrity of Confidential Information.*

*We have previously notified affected customers of incidents involving unauthorized access to certain customer information* in compliance with applicable laws concerning customer notice, and we expect we will provide such notices again. For example, in December 2020, we notified a small number of customers of unauthorized access to their account information that is considered "customer proprietary network information" by the FCC. More typically, such incidents involved attempts to commit fraud by taking control of a customer's phone line. In a few cases, incidents involved unauthorized access to credit card information, financial data, social security numbers or passwords. While we do not believe these security incidents were material and actions were taken to prevent reoccurrence, we expect to continue to be the target of cyber-attacks, data breaches, or security incidents, which may in the future have a material adverse effect on our business, reputation, financial condition, and operating results.

(emphasis added). [2]

14.     As noted above, T-Mobile exposed its customers through a data breach as recently as December 2020. However, that is not the only time that T-Mobile customers have been victimized by T-Mobile data breaches. As noted below, T-Mobile has acknowledged several breaches of its network and computer systems in recent years. In addition, T-Mobile acknowledged a prior data breach at one of T-Mobile's business partners that impacted T-Mobile customers whose PII T-Mobile entrusted to that third party.[3]

**B.     T-Mobile Discovers Massive Data Breach Only after an Internet Forum Post**

15.     On August 15, 2020, Vice.com reported that T-Mobile was investigating a potential breach of its servers. The investigation followed an internet forum post in which a user claimed to be offering a massive trove of personal data of T-Mobile customers for sale.

---

[2]     T-Mobile Form 10-K for the period ending December 31, 2020 at page 12.
[3]     *Id.* at page 13.

CLASS ACTION COMPLAINT - 7

Subsequently, the poster told Vice that they had obtained data from T-Mobile servers that related to more than 100 million people or, as the poster said in an online chat with Vice.com, "T-Mobile USA. Full customer info."[4] Vice.com further reported that the seller was asking for 6 bitcoin, then worth roughly $270,000 for "a subset of the data containing 30 million social security numbers and driver licenses. The seller said they are privately selling the rest of the data at the moment."[5] Internet screen captures appeared consistent with the Vice.com reporting:



16.    Apparently first alerted to the fact that it had been hacked when it was contacted by reporters from Vice.com, T-Mobile indicated that it was investigating a potential data breach,

4      https://www.vice.com/en/article/akg8wg/tmobile-investigating-customer-data-breach-100-million, last visited on August 26, 2021.
5      https://www.vice.com/en/article/akg8wg/tmobile-investigating-customer-data-breach-100-million, last visited on August 26, 2021.

CLASS ACTION COMPLAINT - 8

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 ● FAX 206.682.2992

stating that "[w]e are aware of claims made in an underground forum and have been actively investigating their validity. We do not have any additional information to share at this time."[6]

17. Then, on the evening of August 16, 2021, T-Mobile issued a statement confirming that "[w]e have determined that unauthorized access to some T-Mobile data occurred, however we have not yet determined that there is any personal customer data involved."[7] Notably, this acknowledgement came only after the Company stated that:

> We have been working around the clock to investigate claims being made that T-Mobile data may have been illegally accessed. We take the protection of our customers very seriously and we are conducting an extensive analysis alongside digital forensic experts to understand the validity of these claims, and we are coordinating with law enforcement.[8]

T-Mobile further assured consumers that "[o]nce we have a more complete and verified understanding of what occurred, we will proactively communicate with our customers and other stakeholders."[9] However, T-Mobile's focus on "proactive[] communication" appears to have centered on creating a website on which it buried critical information about the breach below a series of self-serving statements.

18. On August 18, 2021, T-Mobile issued more information regarding the T-Mobile Data Breach, confirming that a massive cache of highly sensitive PII maintained and entrusted to the Company had been accessed by an unknown third party without consumers' consent. In total, data from approximately 48 million consumers, including both current and former T-Mobile prepaid customers and former and prospective consumers of T-Mobile's post-paid services.

19. T-Mobile announced that critical PII, "including first and last names, date of birth, SSN, and driver's license/ID information, were compromised" for approximately 40 million former or prospective T-Mobile customers.[10, 11]

---

[6] *Id.*

[7] https://www.t-mobile.com/news/network/cybersecurity-incident-update-august-2021, last visited August 26, 2021.

[8] https://www.t-mobile.com/news/network/cybersecurity-incident-update-august-2021

[9] https://www.t-mobile.com/news/network/cybersecurity-incident-update-august-2021, last visited August 26, 2021.

[10] T-Mobile Shares Updated Information Regarding Ongoing Investigation into Cyberattack | T-Mobile Newsroom (t-mobile.com), last visited on August 26, 2021.

[11] Postpaid accounts are traditional cellular accounts where the consumer is periodically billed for services. Applicants for postpaid accounts are often required to provide sufficient information for a credit check prior to being offered service.

CLASS ACTION COMPLAINT - 9

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

20.     The Company acknowledged that "first and last names, date of birth, SSN, and driver's license/ID information was compromised" for approximately 7.8 million then-current postpaid consumers and of those, approximately 850,000 T-Mobile prepaid customers had had their names, phone numbers, and PINs exposed.[12, 13]

**C.     T-Mobile Downplays the Significance of the Breach in Communications to Consumers**

21.     On or about August 19, 2021, T-Mobile began informing consumers of the data breach directly via text message (the "Text Notice"):

> T-Mobile has determined that unauthorized access to some of your personal data has occurred. We have no evidence that your debit/credit card information was compromised. We take the protection of our customers seriously. We are taking actions to protect your T-Mobile account and we recommend that you take action to protect your credit. Read more here: t-mo.co/Protect

22.     T-Mobile downplayed the severity of the breach and the risk to consumers in several ways. As a threshold matter, while the Text Notice states that "[w]e have no evidence that your debit/credit card information was compromised[,]" it fails to disclose that the T-Mobile Data Breach resulted in the exposure of a broad range of critical information, including ***names, drivers' licenses, government identification numbers, Social Security numbers, dates of birth,*** T-Mobile prepaid PINs, addresses and phone numbers. In order to discover this critical information, a T-Mobile consumer is required to go to a website linked at the very end of the Text Notice. Critically, a T-Mobile consumer will only reach that web site link after having been told that (a) there "no evidence that your debit/credit card information was compromised," and (b) that "[w]e are taking actions to protect your T-Mobile account . . . ."

---

[12]     Prepaid accounts are cellular plans where the consumer buys access to wireless minutes or data ahead of time and must purchase more data or time when that time or data is consumed.
[13]     T-Mobile Shares Updated Information Regarding Ongoing Investigation into Cyberattack | T-Mobile Newsroom (t-mobile.com), last visited August 26, 2021.

CLASS ACTION COMPLAINT - 10

23.     The website established by T-Mobile begins with "Keeping you safe from cybersecurity threats."[14] Then notes that "[c]ustomers trust us with their private information and we safeguard it with the utmost concern."[15]

24.     While eventually acknowledging that the breach included "names, drivers' licenses, government identification numbers, Social Security numbers, dates of birth, T-Mobile prepaid PINs (which have already been reset to protect you), addresses and phone number(s)[,]" T-Mobile immediately states, in **BOLD** type that "[w]e have no indication that personal financial or payment information, credit or debit card information, account numbers, or account passwords were accessed."

25.     T-Mobile then assures customers that "[w]e're relentlessly focused on taking care of our customers—that has not changed. We've been working around the clock to address this event and continue protecting you, which includes taking immediate steps to protect all individuals who may be at risk." Only after that, and after once again telling consumers – again in **BOLD** type – that "we have no information that indicates any passwords, postpaid PIN numbers, or financial or payment information have been compromised[,]" does T-Mobile provide consumers with advice and information on "smart practices to help keep your account more secure."[16]

## D.     T-Mobile's Privacy Notices and Agreements

26.     T-Mobile promises consumers "[t]he privacy you deserve," comforting consumers, including Plaintiffs and Class Members, that the critical PII that they entrust to T-Mobile will be protected from unauthorized disclosure, that T-Mobile "put[s] you in control with clear, simple data choices," that "[w]e're open and honest about our privacy practices," and that

---

[14]     https://www.t-mobile.com/brand/data-breach-2021?cmpid=MGPO_SS_C_SVCMSG_4U4RU6SQ5MF7PTD66964., last visited August 26, 2021.

[15]     *Id.*

[16]     https://www.t-mobile.com/brand/data-breach-2021?cmpid=MGPO_SS_C_SVCMSG_4U4RU6SQ5MF7PTD66964., last visited August 26, 2021.

CLASS ACTION COMPLAINT - 11

"[w]e provide tools to help keep you protected."[17] In fact, T-Mobile fails to maintain sufficient and adequate security over the PII entrusted to it by consumers.

27.     T-Mobile provides and maintains a Privacy Notice, in which it recognizes that:

> You trust T-Mobile to connect you to the world every day, and we're working hard to earn a place in your heart. ***A big part of that is maintaining your privacy. We believe you deserve transparency, education, choice, protection, and simplicity. Our goal is to help you take action to protect your privacy.***

(emphasis added).[18] Pursuant to the Privacy Agreement, T-Mobile acknowledges that it collects sensitive PII, such as:

- Contact and account information, like your name, usernames, passwords, address, telephone number, email address, and household members.
- Authentication and security information like your government identification, Social Security number, security codes, and signature.
- Demographic information, like your age, gender, veteran status, and date of birth;
- Payment information, like your credit card, debit card, and bank account number (see the T-Mobile Financial Privacy Notice and Sprint Financial Privacy Notice for more information);
- Preference information, including preferences related to marketing, advertising and communications and participation in T-Mobile programs; and
- Other information you choose to provide, like when you submit a survey response, enter a contest or promotion, or contact us.[19]

T-Mobile also identifies how it uses the data that it collects from consumers, including Plaintiffs and Class Members, noting first that "[w]e may disclose personal data about you to third parties ***with your consent***, which we may get in writing, online, or orally. We may also share your personal data with third parties ***when you tell us to*** or when you use our products or services to interact with third parties, whose separate privacy notices may apply to that data." (emphasis added).[20]

28.     T-Mobile also maintains a "Financial Privacy Policy," in which it acknowledges that it collects information such as, *inter alia*, social security numbers, payment history and credit

---

[17]     https://www.t-mobile.com/privacy-center, last visited August 26, 2021.
[18]     https://www.t-mobile.com/privacy-center/our-practices/privacy-policy, last visited August 26, 2021.
[19]     *Id.*
[20]     *Id.*

CLASS ACTION COMPLAINT - 12

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

history, and credit scores and income information.[21] In the Financial Privacy Policy, T-Mobile assures consumers that "[t]o protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards and secured files and buildings."[22]

29. Remarkably, T-Mobile's data security was so lax that it failed to discover the intrusion on its own. Instead, T-Mobile first learned that a breach may have occurred from an online forum post by someone claiming that they had compromised T-Mobile's servers.[23]

**E. T-Mobile's Inadequate Data Security Violated the FTC Act and the FCA**

30. Pursuant to the Federal Trade Commission Act of 1915 ("FCTA"), T-Mobile was required to undertake reasonable and appropriate measures to protect the PII entrusted to it by Plaintiffs and the Class to protect that PII from unauthorized disclosure. Similarly, pursuant to the Federal Communications Act ("FCA"), common carriers, such as T-Mobile, are required to protect the consumer PII entrusted to it.

31. The Federal Trade Commission ("FTC") has adopted and published guidelines establishing reasonable and appropriate data security measures for businesses such as T-Mobile. The guidelines note that businesses should protect the personal customer information that they keep; properly dispose of PII that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies for installing vendor-approved patches to correct security problems. The guidelines also recommend that businesses consider using an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone may be trying to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.

---

[21] https://s.tmocache.com/pdf/T-Mobile-Financial-Privacy-Policy_EN.pdf, last visited August 26, 2021.
[22] Id.
[23] https://www.theverge.com/2021/8/18/22630446/t-mobile-47-million-data-breach-ssn-pin-pii

CLASS ACTION COMPLAINT - 13

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

32.     The FTC has also published guidance titled "Protecting Personal Information: A Guide for Business" in which it addresses steps that businesses should take in protecting sensitive consumer data, including noting that "**[i]f you don't have a legitimate business need for sensitive personally identifying information, don't keep it.**"[24] (emphasis added). A notable instruction given that T-Mobile appears to have kept a large amount of PII belonging to consumers who applied for, but ultimately did not get or maintain, a T-Mobile account. In addition, the FTC guide for business provides a number of guidelines for network and data security, user authentication, breach detection, and other critical security issues.[25] T-Mobile's failure to follow FTC guidelines, including, but not limited to, maintaining data on former customers or consumers who applied for, but did not ultimately sign up for, T-Mobile accounts, violated the guidelines established by the FTC. In addition, by its failure to adopt and maintain reasonable and adequate data security process, T-Mobile engaged in unfair acts or practices within the meaning of the FTC Act.

33.     Pursuant to Section 222 of the Federal Communication Act, common carriers, such as T-Mobile, are required to protect the consumer PII entrusted to it. 47 U.S.C. § 222(a) states that "[e]very telecommunications carrier has a duty to protect the confidentiality of proprietary information of, and relating to . . . customers . . . ." Such customer information includes, *inter alia*, "information that relates to the quantity, technical configuration, type, destination, location, and amount of use of a telecommunications service subscribed to by any customer of a telecommunications carrier, and that is made available to the carrier by the customer solely by virtue of the carrier-customer relationship; and [] information contained in the bills pertaining to telephone exchange service or telephone toll service received by a customer of a carrier." 47 U.S.C § 222(h)(1). With limited exceptions, this customer information may not be disclosed to third parties absent consumer permission.

---

[24]     https://www.ftc.gov/tips-advice/business-center/guidance/protecting-personal-information-guide-business, last visited August 26, 2021.
[25]     https://www.ftc.gov/tips-advice/business-center/guidance/protecting-personal-information-guide-business, last visited August 26, 2021.

CLASS ACTION COMPLAINT - 14

34.     In the T-Mobile Data Breach, unauthorized third parties accessed information protected by 47 U.S.C § 222, including the unique IMEI numbers attached to certain consumer's cellular devices and other data related to billing.

35.     In response to the T-Mobile Data Breach, on August 18, 2021, the FCC reiterated that "[t]elecommunications companies have a duty to protect their customers' information. The FCC is aware of reports of a data breach affecting T-Mobile customers and we are investigating."

36.     In its conduct, T-Mobile has been at a minimum negligent in its duty to protect the covered confidential proprietary information.

**F.     T-Mobile Has Been Breached on Multiple Occasions**

37.     T-Mobile customers have been repeatedly victimized by data breaches, each of which should have served to alert T-Mobile of both (a) the increasing threat of data breaches to the Company and its customers and (b) the apparent weaknesses in T-Mobile's network and data security systems. Indeed, T-Mobile's failure to even establish adequate systems to identify when its systems have suffered a breach is all the more egregious given repeated breaches that the Company has experienced in recent years.[26] These breaches included a breach as recent as December 2020, when the call logs of approximately 200,000 T-Mobile customers were accessed. T-Mobile noted that the breach related to "less than .02 percent" of its customers, downplaying its significance and further noting that it "identified this attack in early December and quickly shut down the incident."[27] Similarly, a T-Mobile breach in August 2018 exposed certain data for approximately two million T-Mobile customers, and a breach in March 2020 that impacted T-Mobile employee accounts also exposed the data of some T-Mobile customers.[28][29]

**G.     The T-Mobile Hacker Exploited T-Mobile's "Awful" Security to Access Class Members' PII**

---

[26]     https://www.theverge.com/2021/8/18/22630446/t-mobile-47-million-data-breach-ssn-pin-pii, last visited August 26, 2021.

[27]     Some T-Mobile customers' call records may have been accessed in a recent breach - The Verge, last visited August 26, 2021.

[28]     T-Mobile was hit by a data breach affecting around 2 million customers - The Verge, last visited on August 26, 2021.

[29]     pii-notice (t-mobile.com), last visited August 26, 2021.

CLASS ACTION COMPLAINT - 15

38. On August 26, 2021, the Wall Street Journal Reported that John Binns, a 21-year-old American living in Turkey, was the hacker behind the T-Mobile Data Breach. As reported by the Wall Street Journal, Binns breached T-Mobile's systems by identifying an unprotected T-Mobile router using publicly available software. Thereafter, Binns gained access to T-Mobile's East Wenatchee, Washington data center and accessed credentials for more than 100 T-Mobile Servers. The Wall Street Journal reported that Binns undertook the effort to gain attention – "generating noise was one goal." It took just a week "burrow" into the T-Mobile servers and access the massive trove of consumer PII. Once Binns accessed T-Mobile's servers he "was panicking because I had access to something big." Binns asserted that T-Mobile's "security is awful." That sentiment appears to be shared by some data experts. Ass the Wall Street Journal reported, the fact that T-Mobile stored data and PII from both prospective clients and former customers "does not sound like good data management practices," according to Glenn Gerstell a former general counsel for the National Security Agency.

**H.     The T-Mobile Data Breach Involves a Staggering Volume of Critical PII that Exposes Plaintiffs and Class Members to an Increased Risk of Fraud and Identity Theft**

39. The T-Mobile Data Breach is not a run of the mill data breach that can be remediated by, for example, replacing credit cards and monitoring billing statements for a month. The data at issue in the T-Mobile Data Breach, names, birth dates, Social Security numbers, addresses, etc., are the holy grail of PII, creating an immediate risk of fraud and identity theft that cannot be quickly or easily remediated. As Brian Krebs, a well-known authority on computer and network security and data breaches notes "[t]his stolen data is being actively sold, but if the past is any teacher much of it will wind up posted online soon. It is a safe bet that scammers will use some of this information to target T-Mobile users with phishing messages, account takeovers and harassment."[30] With this data thieves can set up financial accounts in an unsuspecting consumer's name, such as credit card accounts or consumer loans – and they will be able to do so for as long

---

[30]     https://krebsonsecurity.com/2021/08/t-mobile-breach-exposed-ssn-dob-of-40m-people/, last visited August 26, 2021.

CLASS ACTION COMPLAINT - 16

as that consumer lives. A consumer cannot simply replace their Social Security number or birth date as they might a compromised credit or debit card. "Data stolen and exposed in this breach may also be used for identity theft. Credit monitoring and ID theft protection services can help you recover from having your identity stolen, but most will do nothing to stop the ID theft from happening."[31]

40.    Social Security numbers, in combination with names and birthdates, have remained one of the primary and preeminent means of identity verification for the last fifty years. Hackers know this and have, for years, focused intensely on large scale data breaches that yield a wealth of PII revolving around these three key items. The breached data can then be sold, as it is being here, in bulk on the dark web for just a few dollars per Social Security number.

41.    In 2020, consumers lost approximately $13 billion as a result of "traditional identify theft," where hackers use PII, often accessed through data breaches like the T-Mobile Data Breach, to open credit card accounts or otherwise profit through the takeover of a consumer's identity. Traditional identity theft has gained steam as banks and other financial institutions have transitioned to business models that require less person-to-person interaction.

42.    Those consumers whose phone numbers were also included in the T-Mobile Data Breach face the additional risk of phone number spoofing or hijacking, where hackers transfer a consumer's cellular phone number to a different device and then use that device, along with the PII they have obtained, to impersonate the consumer in communications with banks, credit card companies, brokers, and insurers. The issue of phone spoofing has become more critical in recent years as cellular phones are increasingly used to confirm transactions, changes to passwords, etc. and to engage in a wide array of financial transactions that, just a few years ago, might have required a face to face meeting.

43.    The rise of use of cellular phones as a means of identification has been driven by the increased use of two-factor authentication, which often involves sending a text message to a

---

[31]    *Id.*

CLASS ACTION COMPLAINT - 17

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

cellular telephone to confirm, for example, account openings or transactions. Phone number spoofing or hijacking thus greatly increases the risk of identity theft to consumers.

## V.    CLASS ALLEGATIONS

44.    Pursuant to Fed. R. Civ. P. 23(b)(1), (b)(2), (b)(3), and (c)(4), Plaintiffs assert claims, as set forth below, on behalf of themselves and all other similarly situated as representatives of the following Classes defined as follows:

**Nationwide Class**: All residents of the United States whose PII was accessed or otherwise compromised as a result of the T-Mobile Data Breach

**California Subclass:** All residents of the state of California whose PII was accessed or otherwise compromised as a result of the T-Mobile Breach.

**Iowa Subclass:** All residents of the state of Iowa whose PII was accessed or otherwise compromised as a result of the T-Mobile Breach.

**Texas Subclass:** All residents of the state of Texas whose PII was accessed or otherwise compromised as a result of the T-Mobile Data Breach.

Members of the Nationwide Class, Iowa Class, and Texas Class are referred to herein collectively as "Class Members."

45.    Excluded from the Class are Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, legal representatives, successors, subsidiaries, and assigns. Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

**Certification of the Proposed Class is Appropriate**

46.    The proposed Class and separate subclasses meets the requirements of Fed. R. Civ. P. 23(a), (b)(1), (b)(2), (b)(3), and (c)(4).

a.    **Numerosity**: The exact number of members of the Class is unknown to Plaintiffs at this time but T-Mobile is the second largest wireless carrier in the United States, providing services to almost 105 million Americans. In addition, T-Mobile has acknowledged that the PII of approximately 50 million past, present and potential T-Mobile customers was obtained in the

CLASS ACTION COMPLAINT - 18

T-Mobile Data Breach, indicating that there are many millions of in the Class and subclasses, making joinder of each individual impracticable. Ultimately, members of the Class will be easily identified through Defendant's records.

b.    **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiffs and the other members of the Class and subclasses, and those questions predominate over any questions that may affect individual members of the Class and subclasses. Common questions include:

a)    Whether Defendant failed to adequately safeguard Plaintiffs' and the Class Members' PII;

b)    Whether Defendant failed to protect Plaintiffs' and the Class Members' PII, as promised;

c)    Whether Defendant's computer system systems and data security practices used to protect Plaintiffs' and the Class Members' PII violated federal, state and local laws, or Defendant's duties;

d)    Whether Defendant engaged in unfair, unlawful, or deceptive practices by failing to safeguard Plaintiffs' and the Class Members' PII properly and/or as promised;

e)    Whether Defendant violated the consumer protection statutes and/or data breach notification statutes applicable to Plaintiffs and each of the Class;

f)    Whether Defendant failed to notify Plaintiffs and members of the Class about the T-Mobile as soon as practical and without delay after the breach was discovered;

g)    Whether Defendant acted negligently in failing to safeguard Plaintiffs' and the Class Members' PII;

h)    Whether Defendant entered into contracts with Plaintiffs and the members of the Class that included terms requiring Defendant to protect the confidentiality of Plaintiffs' and the Class Members' PII and have reasonable

CLASS ACTION COMPLAINT - 19

security measures;

      i)     Whether Defendant's conduct described herein constitutes a breach of its contract with Plaintiffs and the Class Members;

      j)     Whether Defendant should retain the money paid by Plaintiffs and Class Members to protect their PII;

      k)     Whether Plaintiffs and the members of the Class are entitled to damages as a result of Defendant's wrongful conduct;

      l)     Whether Plaintiffs and the members of the Class are entitled to restitution as a result of Defendant's wrongful conduct;

      m)     What equitable relief is appropriate to redress Defendant's wrongful conduct; and

      n)     What injunctive relief is appropriate to redress the imminent and currently ongoing harm faced by members of the Class.

      c.     **Typicality**: Plaintiffs' claims are typical of the claims of the members of the Class and subclasses. Plaintiffs and the members of the Class sustained damages as a result of Defendant's uniform wrongful conduct during transactions with them.

      d.     **Adequacy**: Plaintiffs will fairly and adequately represent and protect the interests of the Class, and have retained counsel competent and experienced in complex litigation and class actions. Plaintiffs have no interests antagonistic to those of the Class, and there are no defenses unique to Plaintiffs. Plaintiffs and their counsel are committed to prosecuting this action vigorously on behalf of the members of the proposed Class, and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interest adverse to those of the other members of the Class.

      e.     **Risks of Prosecuting Separate Actions**: This case is appropriate for certification because prosecution of separate actions would risk either inconsistent adjudications which would establish incompatible standards of conduct for the Defendant or would be dispositive of the interests of members of the proposed Class. Furthermore, T-Mobile's computer systems,

CLASS ACTION COMPLAINT - 20

networks, and servers still exist, and are still vulnerable to future attacks – one standard of conduct is needed to ensure the future safety of T-Mobile's computer systems, networks, and servers.

f. **Policies Generally Applicable to the Class**: This case is appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Plaintiffs and proposed Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct towards members of the Class, and making final injunctive relief appropriate with respect to the proposed Class as a whole. Defendant's practices challenged herein apply to and affect the members of the Class uniformly, and Plaintiffs' challenge to those practices hinges on Defendant's conduct with respect to the proposed Class as a whole, not on individual facts or law applicable only to Plaintiffs.

g. **Superiority**: This case is also appropriate for certification because class proceedings are superior to all other available means of fair and efficient adjudication of the claims of Plaintiffs and the members of the Class. The injuries suffered by each individual member of the Class are relatively small in comparison to the burden and expense of individual prosecution of the litigation necessitated by Defendant's conduct. Absent a class action, it would be virtually impossible for individual members of the Class to obtain effective relief from Defendant. Even if members of the Class could sustain individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties, including the Court, and would require duplicative consideration of the common legal and factual issues presented here. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single Court.

## VI. CAUSES OF ACTION

### COUNT I
### NEGLIGENCE
### (On Behalf of the Nationwide Class or Alternatively, State Specific Subclasses)

47. Plaintiffs, individually and on behalf of the Nationwide Class or alternatively, state specific subclasses, reallege and incorporate by reference the allegations contained in each of the preceding paragraphs as if fully set forth herein.

CLASS ACTION COMPLAINT - 21

48.     Defendant required Plaintiffs and Class Members to submit PII in order to obtain and/or receive services from T-Mobile.

49.     Defendant knew, or should have known, of the risks inherent in collecting and storing the PII Plaintiffs and Class Members.

50.     As described above, T-Mobile owed duties of care to Plaintiffs and Class Members whose PII had been entrusted with T-Mobile.

51.     Defendant breached its duty to Plaintiffs and Class Members by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiffs' and Class Members' PII.

52.     Defendant acted with wanton disregard for the security of Plaintiffs' and Class Members' PII. Defendant knew or should have known that T-Mobile had inadequate computer systems and data security practices to safeguard such information, and Defendant knew or should have known that hackers were attempting to access the PII maintained in T-Mobile's network, computer systems, and servers.

53.     A "special relationship" exists between Defendant and the Plaintiffs and Class Members. T-Mobile entered into a "special relationship" with Plaintiffs and Class Members because T-Mobile collected the PII of Plaintiffs and the Class Members and stored it in T-Mobile's network, computer systems, and servers – information that Plaintiffs and the Class Members had been required to provide to T-Mobile.

54.     But for Defendant's wrongful and negligent breach of its duties owed to Plaintiffs and Class Members, Plaintiffs and Class Members would not have been injured.

55.     The injury and harm suffered by Plaintiffs and Class Members was the reasonably foreseeable result of Defendant's breach of its duties. Defendant knew or should have known that it was failing to meet its duties and that Defendant's breach would cause Plaintiffs and Class Members to experience the foreseeable harms associated with the exposure of their PII.

56.     As a direct and proximate result of Defendant's negligent conduct, Plaintiffs and Class Members have suffered injury and are entitled to damages in an amount to be proven at

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

trial.

**COUNT II**
**NEGLIGENCE *PER SE***
**(On Behalf of the Nationwide Class or Alternatively, State Specific Subclasses)**

57.     Plaintiffs, individually and on behalf of the Nationwide Class or alternatively, state specific subclasses, reallege and incorporate by reference the allegations contained in each of the preceding paragraphs as if fully set forth herein.

58.     Pursuant to the Federal Trade Commission Act (15 U.S.C. § 45), Defendant had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiffs' and Class Members' PII.

59.     Defendant breached its duties to Plaintiffs and Class Members under the Federal Trade Commission Act (15 U.S.C. § 45) by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiffs' and Class Members' PII.

60.     Defendant's failure to comply with applicable laws and regulations constitutes negligence *per se*.

61.     But for Defendant's wrongful and negligent breach of its duties owed to Plaintiffs and Class Members, Plaintiffs and Class Members would not have been injured.

62.     The injury and harm suffered by Plaintiffs and Class Members was the reasonably foreseeable result of Defendant's breach of its duties. Defendant knew or should have known that it was failing to meet its duties, and that Defendant's breach would cause Plaintiffs and Class Members to experience the foreseeable harms associated with the exposure of their PII.

63.     As a direct and proximate result of Defendant's negligent conduct, Plaintiffs and Class Members have suffered injury and are entitled to damages in an amount to be proven at trial.

CLASS ACTION COMPLAINT - 23

**COUNT III**
**BREACH OF IMPLIED CONTRACT**
**(On Behalf of the Nationwide Class or Alternatively, State Specific Subclasses)**

64.    Plaintiffs, individually and on behalf of the Nationwide Class or alternatively, state specific subclasses, reallege and incorporate by reference the allegations contained in each of the preceding paragraphs as if fully set forth herein.

65.    Plaintiffs and Class members entered into an implied contract with T-Mobile when they sought wireless services from T-Mobile, for which they were required to provide PII to T-Mobile. The PII provided by Class Members to T-Mobile was governed by, and subject to, T-Mobile's Privacy Policy.

66.    T-Mobile agreed to safeguard and protect the PII of Plaintiffs and Class Members and to timely and accurately notify them in the event that their PII was breached or otherwise compromised.

67.    Plaintiffs and Class members entered into the implied contracts with the reasonable expectation that Defendant's data security practices and policies were reasonable and consistent with industry standards. Plaintiffs and Class members believed that T-Mobile would use part of the monies paid to T-Mobile under the implied contracts to fund adequate and reasonable data security practices.

68.    Plaintiffs and Class members would not have obtained, or sought to obtain, wireless services from T-Mobile or provided and entrusted their PII to Defendant in the absence of the implied contract or implied terms between them and T-Mobile. The safeguarding of the PII of Plaintiffs and Class Members and prompt and sufficient notification of a breach was critical to realize the intent of the parties.

69.    Plaintiffs and Class Members fully performed their obligations under the implied contracts with T-Mobile.

70.    T-Mobile breached its implied contracts with Plaintiffs and Class members to protect their PII when it (1) failed to have reasonable and adequate security protocols and measures in place to protect that information; (2) disclosed that information to unauthorized third parties; and (3) failed to provide timely and accurate notice that their PII was compromised as a

CLASS ACTION COMPLAINT - 24

result of the T-Mobile Data Breach.

71.     As a direct and proximate result of T-Mobile's breaches of implied contract, Plaintiffs and Class members sustained actual losses and damages as described in detail above, and are also entitled to recover nominal damages.

## COUNT IV
## BREACH OF IMPLIED COVENANT
## OF GOOD FAITH AND FAIR DEALING
### (On Behalf of the Nationwide Class or Alternatively, State Specific Subclasses)

72.     Plaintiffs, individually and on behalf of the Nationwide Class or alternatively, state specific subclasses, reallege and incorporate by reference the allegations contained in each of the preceding paragraphs as if fully set forth herein.

73.     Plaintiffs and Class Members entered into valid, binding, and enforceable express or implied contracts with T-Mobile, as alleged above.

74.     These contracts were subject to implied covenants of good faith and fair dealing that all parties would act in good faith and with reasonable efforts to perform their contractual obligations (both explicit and fairly implied) and not to impair the rights of the other parties to receive the rights, benefits, and reasonable expectations under the contracts. These included the covenants that T-Mobile would act fairly and in good faith in carrying out its contractual obligations to take reasonable measures to protect Plaintiffs' and Class Members' PII and to comply with industry standards and federal and state laws and regulations.

75.     A "special relationship" exists between T-Mobile and the Plaintiffs and Class Members. T-Mobile entered into a "special relationship" with Plaintiffs and Class Members who entrusted T-Mobile, pursuant to T-Mobile's requirements, with their PII.

76.     Despite this special relationship with Plaintiffs and Class Members, T-Mobile did not act in good faith and with fair dealing to protect Plaintiffs' and Class Members' PII.

77.     Plaintiffs and Class Members performed all conditions, covenants, obligations, and promises owed to T-Mobile.

78.     T-Mobile's failure to act in good faith in implementing the security measures

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

required by the contracts denied Plaintiffs and Class Members the full benefit of their bargain, and instead they received wireless and related services that were less valuable than what they paid for and less valuable than their reasonable expectations under the contracts. Plaintiffs and Class Members were damaged in an amount at least equal to this overpayment.

79.     T-Mobile's failure to act in good faith in implementing the security measures required by the contracts also caused Plaintiffs and Class Members to suffer actual damages resulting from the theft of their PII, and Plaintiffs and Class Members remain at imminent risk of suffering additional damages in the future.

80.     Accordingly, Plaintiffs and Class Members have been injured as a result of T-Mobile's breach of the covenant of good faith and fair dealing and are entitled to damages and/or restitution in an amount to be proven at trial.

## COUNT V
## NEGLIGENT MISREPRESENTATION
### (On Behalf of the Nationwide Class or Alternatively, State Specific Subclasses)

81.     Plaintiffs, individually and on behalf of the Nationwide Class or alternatively, state specific subclasses, reallege and incorporate by reference the allegations contained in each of the preceding paragraphs as if fully set forth herein.

82.     Defendant negligently and recklessly misrepresented material facts pertaining to the provision of its services to Plaintiffs and Class Members by representing that it would maintain adequate data privacy and security practices and procedures to safeguard Plaintiffs' and Class Members' PII from unauthorized disclosure, release, data breaches, and theft.

83.     Defendant negligently and recklessly misrepresented material facts pertaining to the provision of its services to Plaintiffs and Class Members by representing that it did and would comply with the requirements of relevant federal and state laws pertaining to the privacy and security of Plaintiffs' and Class Members' PII.

84.     Because of multiple warnings about the inadequacy of its data privacy and security practices, Defendant either knew or should have known that its representations were not true.

85.     In reliance upon these misrepresentations, Plaintiffs and Class Members obtained

CLASS ACTION COMPLAINT - 26

or sought to obtain wireless services from Defendant.

86.     Had Plaintiffs and Class Members, as reasonable persons, known of Defendant's inadequate data privacy and security practices, or that Defendant was failing to comply with the requirements of federal and state laws pertaining to the privacy and security of Plaintiffs' and Class Members' PII, they would not have obtained or sought to obtain wireless services from Defendant, and would not have entrusted their PII to Defendant.

87.     As direct and proximate consequence of Defendant's negligent misrepresentations, Plaintiffs and Class Members have suffered the injuries alleged above.

## COUNT VI
## INVASION OF PRIVACY
### (On Behalf of the Nationwide Class or Alternatively, State Specific Subclasses)

88.     Plaintiffs, individually and on behalf of the Nationwide Class or alternatively, state specific subclasses, reallege and incorporate by reference the allegations contained in each of the preceding paragraphs as if fully set forth herein.

89.     Plaintiffs and Class Members had a reasonable expectation that Defendant would maintain the privacy of the PII collected and maintained by T-Mobile.

90.     T-Mobile represented to Plaintiffs and Class Members that it would not disclose their PII except in a handful of clearly defined and disclosed circumstances.

91.     Despite representations to the contrary, Defendant failed to protect and safeguard the PII entrusted to T-Mobile by Plaintiffs and Class Members and in so doing,

    a.  intruded on the private and personal affairs of Plaintiffs and Class Members in a manner highly offensive to a reasonable person;

    b.  invaded the privacy of Plaintiffs and Class Members by disclosing, without authorization, the PII of Plaintiffs and Class Members, inconsistent with both the purpose of the collection of the PII and inconsistent with the uses of said PII previously disclosed to Plaintiffs and Class Members;

    c.  failing to provide sufficient security to protect the PII of Plaintiffs and Class Members from unauthorized access; and

CLASS ACTION COMPLAINT - 27

d. enabling, by failing to protect it sufficiently, the disclosure of PII without the consent of Plaintiffs or Class Members.

92. T-Mobile knew, or acted with reckless disregard in not knowing, that the PII collected from Plaintiffs and Class Members was, because of its nature, subject to a significant risk of unauthorized access.

93. T-Mobile knew, or acted with reckless disregard in not knowing, that a reasonable person would consider its failure to adequately protect and secure their PII to be highly offensive.

94. T-Mobile's disclosure of Plaintiffs' and Class Members' PII without their consent constituted a violation of the privacy of Plaintiffs and Class Members.

95. T-Mobile's failure to provide sufficient security to protect the PII of Plaintiffs and Class Members, leading to unauthorized access to that data by unauthorized parties constituted the unlawful publication of that PII by T-Mobile.

96. The PII disclosed in the T-Mobile Data Breach was not generally known to the public and is not a matter of legitimate public concern.

97. Plaintiffs and Class Members had a reasonable expectation in the privacy of the PII that they provided to T-Mobile. That reasonable expectation was thwarted by Defendant's actions and inactions and Defendant's conduct constituted an invasion of Plaintiffs' and Class Members' privacy.

98. As a direct and proximate result of Defendant's negligent conduct, Plaintiffs and Class Members have suffered injury and are entitled to damages in an amount to be proven at trial as well as restitution and injunctive relief.

**COUNT VII**
**UNJUST ENRICHMENT**
**(On Behalf of the Nationwide Class or Alternatively, State Specific Subclasses)**

99. Plaintiffs, individually and on behalf of the Nationwide Class or alternatively, state specific subclasses, reallege and incorporate by reference the allegations contained in each of the preceding paragraphs as if fully set forth herein.

100. Plaintiffs and Class Members conferred a monetary benefit on Defendant in the

CLASS ACTION COMPLAINT - 28

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

form of payments made for the purchase of wireless services.

101.    Defendant appreciated or had knowledge of the benefits conferred upon it by Plaintiffs and Class Members.

102.    The payments for wireless services that Plaintiffs and Class Members paid to Defendant should have been used by Defendant, in part, to pay for the administrative costs of reasonable data privacy and security practices and procedures.

103.    As a result of Defendant's conduct, Plaintiffs and Class Members suffered actual damages in an amount equal to the difference in value between the wireless services with the reasonable data privacy and security practices and procedures that Plaintiffs and Class Members paid for, and the inadequate wireless services without reasonable data privacy and security practices and procedures that they received.

104.    Under principals of equity and good conscience, Defendant should not be permitted to retain the money belonging to Plaintiffs and Class Members because Defendant failed to implement (or adequately implement) the data privacy and security practices and procedures that Plaintiffs and Class Members paid for and that were otherwise mandated by federal, state, and local laws, and industry standards.

105.    Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiffs and Class Members all unlawful or inequitable proceeds received by Defendant.

106.    A constructive trust should be imposed upon all unlawful or inequitable sums received by Defendant traceable to Plaintiffs and Class Members.

107.    Plaintiffs and Class Members have no adequate remedy at law.

**COUNT VIII**
**BREACH OF CONFIDENCE**
**(On Behalf of the Nationwide Class or Alternatively, State Specific Subclasses)**

108.    Plaintiffs, individually and on behalf of the Nationwide Class or alternatively, state specific subclasses, reallege and incorporate by reference the allegations contained in each of the preceding paragraphs as if fully set forth herein.

109.    Throughout the course of T-Mobile's communications and interactions with

CLASS ACTION COMPLAINT - 29

Plaintiffs and Class Members, T-Mobile was aware that it was requesting, collecting, storing, and maintaining PII of a highly confidential and sensitive nature.

110.   T-Mobile's requests for, and collection, maintenance, and storage of, the PII of Plaintiffs and Class Members was done under the expectation that Plaintiffs' and Class Members' protected PII would be collected, maintained, and stored in confidence, adequately protected from unauthorized disclosure.

111.   Plaintiffs and Class Members provided their PII to T-Mobile with the explicit and implicit understandings that T-Mobile would undertake reasonable and adequate measures to protect the PII from unauthorized disclosure.

112.   T-Mobile voluntarily received Plaintiffs' and Class Members' PII with the understanding that said PII would not be disclosed or disseminated to any unauthorized third parties.

113.   T-Mobile's failure to take adequate and reasonable measures prevent unauthorized access to Plaintiffs' and Class Members' PII resulted in the unauthorized access and theft of said PII.

114.   But for T-Mobile's failure to take reasonable and adequate measures to protect the PII of Plaintiffs and Class Members, in violation of the parties' understanding of confidence, the PII of Plaintiffs and Class Members would not have been compromised, accessed, stolen, offered for sale and/or otherwise used by unauthorized parties. The T-Mobile Data Breach was the direct cause of the theft of Plaintiffs' and Class Members' PII, as well as the resulting damages.

115.   The injury and harm suffered by Plaintiffs and class members is the reasonably foreseeable result of T-Mobile's failure to undertake reasonable and adequate measure to protect the PII of Plaintiffs and Class Members, resulting in the unauthorized disclosure of Plaintiffs' and class members' PII.

116.   T-Mobile knew, or was reckless in not knowing, that its network and computer systems on which it stored and/or maintained the PII of Plaintiffs and Class Members was at risk of unauthorized access because of the value of said PII, because T-Mobile had previously been

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

the subject of data breaches, and because T-Mobile had failed to undertake reasonable and adequate measures to secure the PII of Plaintiffs and Class Members.

117.    As a direct and proximate result of T-Mobile's breaches of confidence, Plaintiffs and class members have been injured and are entitled to damages in an amount to be proven at trial.

**COUNT IX**
**DECLARATORY JUDGMENT**
**(On Behalf of the Nationwide Class)**

118.    Plaintiffs repeat and reallege every allegation set forth in the preceding paragraphs.

119.    Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, the Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the federal and state statutes described in this Complaint.

120.    An actual controversy has arisen in the wake of the T-Mobile Data Breach regarding its present and prospective common law and other duties to reasonably safeguard its customers' PII and whether Defendant is currently maintaining data security measures adequate to protect Plaintiffs and class members from further data breaches that compromise their PII. Plaintiffs remain at imminent risk that further compromises of their PII will occur in the future.

121.    Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

a.      Defendant continues to owe a legal duty to secure consumers' PII and to timely notify consumers of a data breach under the common law, Section 5 of the FTC Act, and various state statutes.

b.      Defendant continues to breach this legal duty by failing to employ reasonable measures to secure consumers' PII.

122.    The Court also should issue corresponding prospective injunctive relief requiring Defendant to employ adequate security practices consistent with law and industry standards to protect consumers' PII.

123.    If an injunction is not issued, Plaintiffs and class members will suffer irreparable

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

injury, and lack an adequate legal remedy, in the event of another data breach at T-Mobile. The risk of another such breach is real, immediate, and substantial. If another breach occurs, Plaintiffs and Class Members will not have an adequate remedy at law because many of the resulting injuries are not readily quantified and they will be forced to bring multiple lawsuits to rectify the same conduct.

124.    The hardship to Plaintiffs and Class Members if an injunction does not issue exceeds the hardship to Defendant if an injunction is issued. Among other things, if another massive data breach occurs at T-Mobile, Plaintiffs and Class Members will likely be subjected to fraud, identify theft, and other harms described herein. On the other hand, the cost to Defendant of complying with an injunction by employing reasonable prospective data security measures is relatively minimal, and Defendant has a pre-existing legal obligation to employ such measures.

125.    Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing another data breach at T-Mobile, thus eliminating the additional injuries that would result to Plaintiffs and the millions of consumers whose PII would be further compromised.

## COUNT X
## VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW, Cal. Bus. & Prof. Code §§ 17200, *et seq*.
## (On Behalf of The California Subclass)

126.    The California Plaintiffs identified above ("Plaintiffs" for purposes of this Count), individually and on behalf of the California Subclass, reallege and incorporate by reference the allegations contained in each of the preceding paragraphs as if fully set forth herein.

127.    Defendant is a "person" as defined by Cal. Bus. & Prof. Code §17201. Defendant violated Cal. Bus. & Prof. Code §§ 17200, *et seq*. ("UCL") by engaging in unlawful, unfair, and deceptive business acts and practices. Defendant's "unfair" acts and practices include:

    a.    Defendant failed to implement and maintain reasonable security measures to protect Plaintiffs' and California Subclass members' PII from unauthorized disclosure, release, data breaches, and theft, which was a direct and proximate cause of the T-Mobile Data Breach.

CLASS ACTION COMPLAINT - 32

b.    Defendant failed to identify foreseeable security risks, remediate identified security risks, and adequately maintain and improve security despite knowing and acknowledging the risk of data breaches. When weighed against the significant harm to Plaintiffs and the California Subclass, this conduct is unfair.

c.    Defendant's failure to implement and maintain reasonable security measures also was contrary to legislatively-declared public policy that seeks to protect consumers' data and ensure that those entrusted with it use appropriate security measures. These policies are reflected in laws, including the FTC Act, 15 U.S.C. § 45, the FCA, 47 U.S.C § 222, and California's Consumer Records Act, Cal. Civ. Code § 1798.81.5.

d.    Defendant's failure to implement and maintain reasonable security measures resulted in substantial injuries to consumers - Plaintiffs and the California Subclass. These injuries are not outweighed by any benefits to consumers or competition. Because consumers were unaware of T-Mobile's inadequate security and failure to adequately protect consumers' PII, consumers could not have reasonably avoided the harms caused by Defendant.

128.    Defendant has engaged in "unlawful" business practices by violating multiple laws, including the California Consumer Records Act, Cal. Civ. Code §§ 1798.81.5 (requiring reasonable data security measures), California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1780, *et seq*., and the California Consumer Privacy Act, Cal. Civ. Code § 1798.100 *et seq.*, the FTC Act, 15 U.S.C. § 45, the FCA, 47 U.S.C § 222, and California common law.

129.    Defendants' unlawful, unfair, and deceptive acts and practices include:

a.    Failing to implement and maintain reasonable security and privacy measures to protect Plaintiffs' and California Subclass members' PII, which was a direct and proximate cause of the T-Mobile Data Breach;

b.    Failing to identify foreseeable security risks, remediate identified security risks, and adequately maintain and improve security despite knowing and

CLASS ACTION COMPLAINT - 33

acknowledging the risk of data breaches, which was a direct and proximate cause of the T-Mobile Data Breach;

c.   Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and California Subclass members' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45, the FCA, 47 U.S.C § 222, and California's Customer Records Act, Cal. Civ. Code §§ 1798.80, *et seq*., which was a direct and proximate cause of the T-Mobile Data Breach;

d.   Misrepresenting that T-Mobile would protect the privacy and confidentiality of Plaintiffs' and California Subclass members' PII, including by implementing and maintaining reasonable security measures;

e.   Misrepresenting that T-Mobile would comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and California Subclass members' PII, including duties imposed by the FTC Act, the FCA, 47 U.S.C § 222, and the California Consumer Records Act, Cal. Civ. Code §§ 1798.80, *et seq*.;

f.   Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiffs' and California Subclass members' PII; and

g.   Omitting, suppressing, and concealing the material fact that they did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and California Subclass members' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45, the FCA, 47 U.S.C § 222, the California Consumer Records Act, Cal. Civ. Code §§ 1798.80, *et seq*.

130.   Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of consumers' PII.

131.   As a direct and proximate result of Defendants' unfair, unlawful, and fraudulent acts and practices, Plaintiffs and California Subclass members were injured and lost money or property: the money received by the T-Mobile for its services including: the loss of the benefit of

CLASS ACTION COMPLAINT - 34

their bargain with and overcharges by T-Mobile as they would not have paid T-Mobile for wireless services or would have paid less for such services but for the violations alleged herein; losses from fraud and identity theft; costs for credit monitoring and identity protection services; time and expenses related to monitoring their financial accounts for fraudulent activity; loss of value of their PII; and an increased, imminent risk of fraud and identity theft.

132. Defendant acted intentionally, knowingly, and maliciously to violate California's Unfair Competition Law, and recklessly disregarded Plaintiffs' and California Subclass members' rights. Defendant is of such a sophisticated and large nature that other data breaches and public information regarding security vulnerabilities put it on notice that its network security and privacy protections were inadequate.

133. Plaintiffs and California Subclass members seek all monetary and non-monetary relief allowed by law, including restitution of all profits stemming from Defendant's unfair, unlawful, and fraudulent business practices or use of their PII; declaratory relief; reasonable attorneys' fees and costs under California Code of Civil Procedure § 1021.5; injunctive relief; and other appropriate equitable relief.

### COUNT XI
### VIOLATION OF THE CALIFORNIA CONSUMER PRIVACY ACT, ("CCPA")
### Cal. Civ. Code §§ 1798.100, *et seq.*
### (On Behalf of the California Subclass)

134. The California Plaintiffs identified above ("Plaintiffs" for purposes of this Count), individually and on behalf of the California Subclass, reallege and incorporate by reference the allegations contained in each of the preceding paragraphs as if fully set forth herein.

135. T-Mobile had a duty to implement and maintain reasonable security procedures, protocols, and practices for the protection of Plaintiffs and the California Subclass Members' PII.

136. Plaintiffs and the California Subclass Members provided their personal information, as defined in 1798.81.5, including, *inter alia*, PII such as names, addresses, driver's license numbers, and Social Security numbers, to T-Mobile as a requirement of seeking wireless services from T-Mobile.

CLASS ACTION COMPLAINT - 35

137.     T-Mobile failed to uphold its duty to implement and maintain reasonable and adequate measures to protect Plaintiffs' and California Subclass Members' PII from unauthorized access and theft, thus violating the California Consumer Privacy Act.

138.     As a direct and proximate result of T-Mobile's acts, including, but not limited to, its failure to implement and maintain reasonable and adequate network and computer security procedures, protocols, and practices, Plaintiffs' and the Statewide Subclass Members' PII was subjected to unauthorized access and theft.

139.     As a direct and proximate result of Defendant's acts, including but not limited to its failure to encrypt its systems and otherwise implement and maintain reasonable security procedures and practices, Plaintiffs and the Statewide Subclass Members were injured and lost money or property, including, but not limited to, the loss of Plaintiffs' and California Subclass Members' legally protected interest in the confidentiality and privacy of their PII, nominal damages, statutory damages, and additional losses as described above.

140.     T-Mobile knew or was reckless in not knowing that its network, computer systems, and data security procedures, protocols, and practices were inadequate to safeguard Plaintiffs' and the California Subclass Members' PII. T-Mobile did not implement and maintain reasonable security procedures, protocols, and practices despite its knowledge of the risk of unauthorized access and the critical nature of the PII of Plaintiffs and California Subclass members that was stored on T-Mobiles network and computer systems.

141.     Defendant is a business, as defined in Cal. Civ. Code § 1798.140 (c)(1), as it is a corporation organized for the profit or financial benefit of its owners, with annual gross revenues exceeding $25 million and/or annually receives, for its commercial purposes the personal information of 50,000 or more consumers, households, or devices.

142.     Plaintiffs and California Subclass Members seek injunctive or other equitable relief to ensure T-Mobile hereinafter adequately safeguards and protects the PII of Plaintiffs and California Subclass Members by implementing reasonable and adequate security procedures, protocols, and practices. Such relief is critical because T-Mobile continues to maintain the PII of

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1  Plaintiffs and California Subclass Members and Plaintiffs and California Subclass Members have
2  a continuing interest in its protection.

3       143.    Plaintiffs' counsel has provided notice to Defendant via certified mail. Assuming
4  Defendant does not cure the T-Mobile Data Breach within 30 days, Plaintiffs will amend this
5  Complaint to seek actual damages and statutory damages of no less than $100 and up to $750 per
6  customer record subject to the Data Breach on behalf of the California Class as authorized by the
7  CCPA.

8  

**COUNT XII**
**VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT,**
**Cal. Civ. Code §§ 1750, *et seq.***
**(On Behalf of the California Subclass)**

10       144.    The California Plaintiffs identified above ("Plaintiffs" for purposes of this Count),
11  individually and on behalf of the California Subclass, reallege and incorporate by reference the
12  allegations contained in each of the preceding paragraphs as if fully set forth herein.

13       145.    The Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.*, ("CLRA")
14  is a comprehensive statutory scheme enacted to protect consumers against unfair and deceptive
15  business practices in connection with the conduct of businesses providing goods, property or
16  services to consumers primarily for personal, family, or household use. To that end, it is to be
17  liberally construed.

18       146.    Defendant is a "person[s]" as defined by Civil Code §§ 1761(c) and 1770, and has
19  provided "services" as defined by Civil Code §§ 1761(b) and 1770.

20       147.    Civil Code section 1770, subdivision (a)(5) prohibits a person involved in a
21  transaction from "[r]epresenting that goods or services have sponsorship, approval,
22  characteristics, ingredients, uses, benefits, or quantities which they do not have."

23       148.    Civil Code section 1770, subdivision (a)(7) prohibits one who is involved in a
24  transaction from "[r]epresenting that goods or services are of a particular standard, quality, or
25  grade . . . if they are of another."

CLASS ACTION COMPLAINT - 37

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

149.     Plaintiffs and the California Subclass members are "consumer[s]" as defined by Civil Code §§ 1761(d) and 1770, and have engaged in a "transaction" as defined by Civil Code §§ 1761(e) and 1770.

150.     Defendant's acts and practices were intended to, and did, result in the sales of services to Plaintiffs and California Subclass members in violation of Civil Code § 1770, including, but not limited to, the following:

a.     Representing that goods or services have characteristics that they do not have;

b.     Representing that goods or services are of a particular standard, quality, or grade when they were not;

c.     Advertising goods or services with intent not to sell them as advertised; and

d.     Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

151.     Defendant's representations and omissions were material because they were likely to and did deceive reasonable consumers about the adequacy of Defendants' data security and ability to protect the confidentiality of consumers' PII.

152.     Had T-Mobile disclosed to Plaintiffs and California Subclass members that its network and computer and data storage systems were not secure and, thus, vulnerable to attack, Defendant would have been unable to continue in business and would have been forced to adopt reasonable and adequate data security measures and comply with the law. Instead, T-Mobile received, compiled, and maintained Plaintiffs' and California Subclass members' PII as a requirement for the services Defendant provided and for which Plaintiffs and California Subclass members paid without advising Plaintiffs and California Subclass members that Defendant's data security practices were insufficient to maintain the safety and confidentiality of Plaintiffs' and class members' PII. Accordingly, Plaintiffs and California Subclass members acted reasonably in relying on Defendant's misrepresentations and omissions, the truth of which they could not have discovered.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

153.    As a direct and proximate result of Defendant's violations of California Civil Code § 1770, Plaintiffs and California Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including loss of the benefit of their bargain, as they would not have paid T-Mobile for services or would have paid less for such services but for the violations alleged herein; losses from fraud and identity theft; costs for credit monitoring and identity protection services; time and expenses related to monitoring their financial accounts for fraudulent activity; loss of value of their PII; and an increased, imminent risk of fraud and identity theft.

154.    Pursuant to Cal. Civ. Code § 1782(a), on August 26, 2021, Michael Harper and Sue Harper and Melanie Jaquess served Defendant with notice of its alleged violations of the CLRA by certified mail return receipt requested. If, within thirty days after the date of such notification, Defendant fails to provide appropriate relief for its violations of the CLRA, Plaintiffs will amend this complaint accordingly to seek monetary damages.

**COUNT XIII**
**VIOLATION OF PERSONAL INFORMATION SECURITY BREACH PROTECTION LAW, ¶Iowa Code § 715C.2**
**(On Behalf of the Iowa Subclass)**

155.    The Iowa Plaintiff identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the Iowa Subclass, repeats and alleges the paragraphs above as if fully alleged herein.

156.    T-Mobile is a business that owns or licenses computerized data that includes PII as defined by Iowa Code § 715C.2(1).

157.    Plaintiff's and Iowa Subclass members' PII (*e.g.*, Social Security numbers) includes PII as covered under Iowa Code § 715C.2(1).

158.    T-Mobile is required to accurately notify Plaintiff and Iowa Subclass members if it becomes aware of a breach of its data security system in the most expeditious time possible and without unreasonable delay under Iowa Code § 715C.2(1).

CLASS ACTION COMPLAINT - 39

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

159.     Because T-Mobile was aware of a breach of its security system, T-Mobile had an obligation to disclose the data breach in a timely and accurate fashion as mandated by Iowa Code § 715C.2(1).

160.     By failing to disclose the T-Mobile data breach in a timely and accurate manner, T-Mobile violated Iowa Code § 715C.2(1).

161.     Pursuant to Iowa Code § 715C.2(9), a violation of Iowa Code § 715C.2(1) is an unlawful practice pursuant to Iowa Code Ann. § 714.16(7). As a direct and proximate result of T-Mobile's violations of Iowa Code § 715C.2(1), Plaintiff and Iowa Subclass members suffered damages, as described above.

162.     Plaintiff and Iowa Subclass members seek relief under Iowa Code § 714.16(7), including actual damages and injunctive relief.

### COUNT XIV
### VIOLATION OF DECEPTIVE TRADE PRACTICES—CONSUMER PROTECTION ACT,
**Texas Bus. & Com. Code §§ 17.41,** *et seq.*
**(On Behalf of the Texas Subclass)**

163.     The Texas Plaintiff identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the Texas Subclass, repeats and alleges the paragraphs above as if fully alleged herein.

164.     T-Mobile is a "person," as defined by Tex. Bus. & Com. Code § 17.45(3).

165.     Plaintiff and the Texas Subclass members are "consumers," as defined by Tex. Bus. & Com. Code § 17.45(4).

166.     T-Mobile advertised, offered, or sold goods or services in Texas and engaged in trade or commerce directly or indirectly affecting the people of Texas, as defined by Tex. Bus. & Com. Code § 17.45(6).

167.     T-Mobile engaged in false, misleading, or deceptive acts and practices, in violation of Tex. Bus. & Com. Code § 17.46(b), including:

a.     Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have;

CLASS ACTION COMPLAINT - 40

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

b.     Representing that goods or services are of a particular standard, quality or grade, if they are of another; and

c.     Advertising goods or services with intent not to sell them as advertised.

T-Mobile's false, misleading, and deceptive acts and practices include:

d.     Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff's and Texas Subclass members' PII, which was a direct and proximate cause of the Equifax data breach;

e.     Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Equifax data breach;

f.     Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Texas Subclass members' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45, and Texas's data security statute, Tex. Bus. & Com. Code § 521.052, which was a direct and proximate cause of the Equifax data breach;

g.     Misrepresenting that it would protect the privacy and confidentiality of Plaintiff and Texas Subclass members' PII, including by implementing and maintaining reasonable security measures;

h.     Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Texas Subclass members' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45, and Texas's data security statute, Tex. Bus. & Com. Code § 521.052;

i.     Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff and Texas Subclass members' PII; and

j.     Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff

CLASS ACTION COMPLAINT - 41

and Texas Subclass members' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45, and Texas's data security statute, Tex. Bus. & Com. Code § 521.052.

168.    T-Mobile intended to mislead Plaintiff and Texas Subclass members and induce them to rely on its misrepresentations and omissions.

169.    T-Mobile's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of T-Mobile's data security and ability to protect the confidentiality of consumers' PII.

170.    Had T-Mobile disclosed to Plaintiff and Class members that its data systems were not secure and, thus, vulnerable to attack, T-Mobile would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law. Because T-Mobile held itself out as being capable of protecting and maintaining the PII entrusted to it by consumers, including Plaintiff and the Texas Class, Plaintiff and the Texas Subclass members acted reasonably in relying on T-Mobile's misrepresentations and omissions, the truth of which they could not have discovered.

171.    T-Mobile had a duty to disclose the above facts due to the sensitivity and of the PII in its possession, and the industry standards for the protection of critical PII. This duty arises because consumers, including Plaintiff and the members of the Texas Class are required to entrust their sensitive PII to T-Mobile in order to receive wireless services from T-Mobile. T-Mobile's duty to disclose also arose from its:

a.    Possession of exclusive knowledge regarding the security of the data in its systems;

b.    Active concealment of the state of its security; and/or

c.    Incomplete representations about the security and integrity of its computer and data systems, and its prior data breaches, while purposefully withholding material facts from Plaintiff and the Texas Subclass that contradicted these representations.

CLASS ACTION COMPLAINT - 42

172.     T-Mobile engaged in unconscionable actions or courses of conduct, in violation of Tex. Bus. & Com. Code Ann. § 17.50(a)(3). T-Mobile engaged in acts or practices which, to consumers' detriment, took advantage of consumers' lack of knowledge, ability, experience, or capacity to a grossly unfair degree.

173.     Consumers, including Plaintiff and Texas Subclass members, lacked knowledge about deficiencies in T-Mobile's data security because this information was known exclusively by T-Mobile. Consumers also lacked the ability, experience, or capacity to secure the PII in T-Mobile's possession or to fully protect their interests with regard to their data. Plaintiff and Texas Subclass members lack expertise in information security matters and do not have access to T-Mobile's systems in order to evaluate its security controls. T-Mobile took advantage of its special skill and access to PII to hide its inability to protect the security and confidentiality of Plaintiff's and Texas Subclass member's PII.

174.     T-Mobile intended to take advantage of consumers' lack of knowledge, ability, experience, or capacity to a grossly unfair degree, with reckless disregard of the unfairness that would result. The unfairness resulting from T-Mobile's conduct is glaringly noticeable, flagrant, complete, and unmitigated. The T-Mobile Data Breach, which resulted from T-Mobile's unconscionable business acts and practices, exposed Plaintiff and Texas Subclass members to a wholly unwarranted risk to the safety of their PII and the security of their identity or credit, and worked a substantial hardship on a significant and unprecedented number of consumers. Plaintiff and Texas Subclass members cannot mitigate this unfairness because they cannot undo the data breach.

175.     T-Mobile acted intentionally, knowingly, and maliciously to violate Texas's Deceptive Trade Practices-Consumer Protection Act, and recklessly disregarded Plaintiff's and Texas Subclass members' rights. Equifax's numerous past data breaches put it on notice that its security and privacy protections were inadequate.

176.     As a direct and proximate result of T-Mobile's unconscionable and deceptive acts or practices, Plaintiff and Texas Subclass members have suffered and will continue to suffer

CLASS ACTION COMPLAINT - 43

injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their PII. T-Mobile's unconscionable and deceptive acts or practices were a producing cause of Plaintiff's and Texas Subclass members' injuries, ascertainable losses, economic damages, and non-economic damages, including their mental anguish.

177. T-Mobile's violations present a continuing risk to Plaintiff and Texas Subclass members as well as to the general public.

178. Pursuant to Texas Bus. & Com. Code § 17.505, on August 25, 2021, Plaintiff Malone sent Defendant notice of its alleged violations of the Deceptive Trade Practices Act by certified mail return receipt requested. If, within 60 days after the date of such notification, Defendant fails to provide appropriate relief for its violations of the Deceptive Trade Practices Act, Plaintiff will amend this complaint accordingly to seek all monetary and non-monetary relief allowed by law, including economic damages; damages for mental anguish; treble damages for each act committed intentionally or knowingly; court costs; reasonably and necessary attorneys' fees; injunctive relief; and any other relief which the court deems proper.

## VII. PRAYER FOR RELIEF

179. WHEREFORE, Plaintiffs, on behalf of themselves and the Nationwide Class and their respective state specific subclasses, seek the following relief:

A. An order certifying this action as a class action under Fed. R. Civ. P. 23, defining the Classes as requested herein, appointed the undersigned as Class counsel, and finding that Plaintiffs are the proper representatives of the Classes requested herein.

B. Plaintiffs request injunctive relief. Awarding injunctive and other equitable relief as is necessary to protect the interests of the Class Members, including:

(i) an order prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

CLASS ACTION COMPLAINT - 44

(ii)     requiring Defendant to protect all data collected or received through the course of its business in accordance with federal, state, and local laws, and best practices under industry standards;

(iii)    requiring Defendant to design, maintain, and test its computer systems to ensure that PII in its possession is adequately secured and protected;

(iv)     requiring Defendant to disclose any future data breaches in a timely and accurate manner;

(v)      requiring Defendant to engage third-party security auditors as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis and ordering them to promptly correct any problems or issues detected by these auditors;

(vi)     requiring Defendant to audit, test, and train its security personnel to run automated security monitoring, aggregating, filtering and reporting on log information in a unified manner;

(vii)    requiring Defendant to implement multi-factor authentication requirements;

(viii)   requiring Defendant'' employees to change their passwords on a timely and regular basis, consistent with best practices;

(ix)     requiring Defendant to encrypt all PII;

(x)      requiring Defendant to audit, test, and train its security personnel regarding any new or modified procedures;

(xi)     requiring Defendant to segment data by, among other things, creating firewalls and access controls so that if one area of the T-Mobile network is compromised, hackers cannot gain access to other portions of T-Mobile's systems;

CLASS ACTION COMPLAINT - 45

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

(xii)  requiring Defendant to purge, delete, and destroy in a reasonably secure and timely manner PII no longer necessary for its provision of services;

(xiii)  requiring Defendant to conduct regular database scanning and securing checks;

(xiv)  requiring Defendant to routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

(xv)  requiring Defendant to provide lifetime credit monitoring and identity theft repair services to Class Members; and

(xvi)  requiring Defendant to educate all Class Members about the threats they face as a result of the loss of their PII to third parties, as well as steps Class Members must take to protect themselves.

C.  Plaintiffs also requests actual damages, punitive damages, treble damages, statutory damages, exemplary damages, equitable relief, restitution, disgorgement of profits, attorney's fees, statutory costs, and such other and further relief as is just and proper.

## VIII. DEMAND FOR JURY TRIAL

180.  Plaintiffs demand a trial by jury on all triable issues.

Dated: August 27, 2021

Respectfully submitted,

**TOUSLEY BRAIN STEPHENS PLLC**

By: *s/ Kim D. Stephens*
Kim D. Stephens, P.S., WSBA #11984
By: *s/ Jason T. Dennett*
Jason T. Dennett, WSBA #30686
By: *s/ Kaleigh N. Powell*
Kaleigh N. Powell, WSBA #52684
1200 Fifth Avenue, Suite 1700
Seattle, WA 98101
Tel: (206) 682-5600/Fax: (206) 682-2992
Email: jdennett@tousley.com
kstephens@tousley.com
jdennett@tousley.com
kpowell@tousley.com

*Counsel for Plaintiffs*

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

**BARRACK, RODOS & BACINE**
STEPHEN R. BASSER*
SAMUEL M. WARD*
600 West Broadway, Suite 900
San Diego, CA 92101
Telephone: (619) 230-0800
Facsimile: (619) 230-1874
sbasser@barrack.com
sward@barrack.com

*Counsel for Plaintiffs Michael Harper, Sue Harper, Chuck Sallade, and Michael Malone*

**POMERANTZ LLP**
JORDAN L. LURIE*
ARI Y. BASSER*
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone: (310) 432-8492
jllurie@pomlaw.com
abasser@pomlaw.com

*Counsel for Plaintiff Melanie Jaquess*

**EMERSON FIRM, PLLC**
John G. Emerson, WSBA# 30956
2500 Wilcrest, Suite 300
Houston, TX 77042
Telephone: (800) 551-8649
Facsimile: (501) 286-4659
jemerson@emersonfirm.com

*Counsel for Plaintiffs Chuck Sallade and Michael Malone*

**Law Offices of I. Stephen Rabin**
I. STEPHEN RABIN*
5 Mohican Lane
Irvington, NY 10533
Telephone: (212) 880-3722
isteverabin@gmail.com

*Counsel for Plaintiff Michael Malone*

*\* Applications for admission Pro Hac Vice forthcoming*

CLASS ACTION COMPLAINT - 47